HOFFMIRE v. HOFFMIRE. (a)

---

Where a solicitor appears for a party, proceedings will not be set aside because he gave him no authority to appear. The remedy is against the solicitor.

The principle upheld, that a condonation of the offence of adultery implies a condition that the wife shall be treated with conjugal kindness.

Where a husband commits a felony and is convicted and imprisoned, this will revive a right to sue for a divorce *a vinculo matrimonii*, although condonation may have intervened. Such an act of his, by its disgracing himself and family, is a cruelty towards the wife and the reverse of conjugal kindness.

---

BILL for divorce *a vinculo matrimonii*, filed by the wife against the husband, on the ground of adultery. A solicitor appeared for the husband and consented to the bill's being taken as confessed and to a reference. A decree of divorce was had; and an application was now made, on the part of the husband, to set aside the proceedings for irregularity and to allow the defendant to put in an answer, showing condonation.

*Nov. 6, 1837.*

*Divorce. Condonation. Solicitor and Client.*

The irregularity was, in there having been no order entered for the defendant to answer the bill in forty days; although, it was admitted, that a copy of the bill and notice of such an order had been served. It appeared also that the mode of taking the bill as confessed, upon the consent of the solicitor for the husband, had not been entered in the ordinary way.

The defendant, in an affidavit, showed he was convicted of a felony and in the state prison at the time he received the subpœna to appear and answer, but had been afterwards pardoned; that he never retained the solicitor who appeared for him; and that it was true he had committed adultery, but his wife had forgiven him and they had lived as man and wife since she had a knowledge of his misconduct. The solicitor for the defendant likewise swore that he had not been retained by him, but had been engaged and requested to attend to the suit by the defendant's mother. Other affidavits were pro-

(a) Affirmed on appeal to the chancellor; 7 Paige's C. R. 60.

duced, to show that the wife had information leading to the act of adultery, and her declarations of forgiveness of her husband. However, the complainant denied her having positive knowledge of the guilt of the defendant and showed her being dependent upon her father ever since the imprisonment of her husband. There were, also, depositions which went to the credibility of the defendant under oath.

Mr. *Hay S. Mackay*, (who had been substituted, in the place of the former solicitor,) for the defendant.

Mr. *Charles Edwards*, for the complainant.

THE VICE-CHANCELLOR :—The irregularity of the proceedings, anterior to the taking the bill as confessed, was waived by the consent of the defendant's solicitor to the order *pro confesso* and to the order of reference and by the solicitor's appearance on behalf of the defendant, before the master, upon the reference to take proofs.

This solicitor undertook to appear for the defendant; and if it were without authority and the latter be injured, then he must seek redress against such solicitor. It is not ground enough to set aside the proceedings. The situation of the matter might be different provided the unauthorized appearance was obtained by the connivance or through the procurement of the complainant; but this is not pretended, nor does any thing appear against her. The proceedings cannot be disturbed for irregularity.

Then, with respect to the merits. The defendant admits he has been guilty of adultery; but claims, by way of defence or bar, the benefit of a condonation on account of subsequent cohabitation. The complainant, however, denies her knowledge of it; although it is evident she entertained strong suspicions of his infidelity at a time when she continued to cohabit with him. However, I consider the defendant's after-misconduct, which caused him to be convicted of a felony and sentenced to the state prison, operated as an abandonment of his duty towards his wife; he thus, by his own act, put it out of his own power to provide for her; it was—so far as she was concerned and so far as her domestic happiness went, the reverse of conjugal kindness. In the case of *Johnson* v. *John-*

*son*, (1 Edwards's Ch. R. 439,) I had the question of condonation before me; and I considered that cruel treatment after condonation would revive a claim for divorce *a vinculo matrimonii*. This case went to the chancellor; and then, to the court of errors: 14 Wend. 637. The opinion of Chief Justice Savage fully sustains the doctrine I put forth; but from a note which the reporter has added to the case, it would seem that the question may still be considered as an open one. I am inclined to stand by my opinion, confirmed, as it is, by the chief justice. In the present case, the husband, after the suggested forgiveness, disgraces himself and his family by committing a felony, and he is sentenced to three years imprisonment. I have a right to consider it a lawful sentence. I shall hold this conduct of his a revival of her cause of suit and as destroying the supposed condonation.

The motion is denied, with costs.