(59 App. Div. 207.)

## DEISLER v. DEISLER.

(Supreme Court, Appellate Division, Second Department. March 15, 1901.)

1. DIVORCE—DESERTION—DEFENSE—MISCONDUCT OF WIFE.

Code Civ. Proc. § 1765, provides that the misconduct of plaintiff shall be a defense in a divorce proceeding. During an extended absence of a husband, one N., a friend of the husband, took his meals with the wife at the residence of the husband, and the wife and N. visited various resorts, drank together at the houses of both, and conducted themselves in such a manner as to cause comment among the neighbors. After the return of the husband, he intercepted a loving letter written by the wife to N. The husband afterwards sued for a divorce. On the wife giving a written statement that she had borne no improper relations with N., and promising not to see him in the future, the action was dismissed. She afterwards met him in secret many times. The husband then left the house, and refused to support her. *Held*, that the misconduct of the wife was a sufficient defense to an action for divorce instituted by her on the grounds of desertion.

2. SAME—CONDONATION.

Where a husband, having no positive proof that his wife is guilty of adultery, settled a divorce suit on her executing a written statement that she had no improper relations with the co-respondent, and agreeing not to meet him in the future, but she, however, continued to meet him se-

cretly, *held* there is no condonation which will prevent setting up such fact as a defense to an action by the wife for desertion.

Hirschberg, J., dissenting.

Appeal from special term, Kings county.

Suit by Lizzie Deisler against Gustav Deisler for a divorce. From a decree in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Theodore Baumeister (Samson Lachman, on the brief), for appellant.

Nathaniel Cohen, for respondent.

WOODWARD, J. The plaintiff alleges in her complaint, outside of the formal averments of marriage, issue of the marriage, etc., "that on or about the said 17th day of August, 1899, the defendant abandoned plaintiff, and the home and children, the above-named issue of said marriage, and has ever since refused and neglected to provide for her and their support and maintenance, and that plaintiff is and has been entirely without means; that defendant has neglected and refused to pay and liquidate the reasonable and necessary bills for food, clothing, help hire, and other necessaries of plaintiff and said children." The complaint alleges that the defendant owns property, has money in the bank, and that he has a large annual income; demands that she have judgment for a limited divorce,— that she be granted leave to live separate and apart from defendant and from his bed and board, that she be awarded the custody of the children and the costs of this action. The defendant, answering, admits most of the allegations of the complaint, with the exception of his annual income, and raises the material issue by a separate and distinct defense alleging conduct on the part of the plaintiff which justified him in leaving her and in refusing to contribute to her support. Upon the trial the evidence was devoted largely to the main issue, and from the judgment entered in favor of the plaintiff appeal is brought to this court.

There is no question that the defendant left the plaintiff on or about the 17th day of August, 1899, and that he has since refused to live with her or to contribute to her support; and the only question necessary to determine upon this appeal is whether, under the circumstances developed by the evidence, the defendant is guilty of desertion within the contemplation of the law. The term "desertion," as used in the law of divorce, contemplates a voluntary separation of one party from the other, without justification, with the intention of not returning. Williams v. Williams, 130 N. Y. 193, 197, 29 N. E. 98, 14 L. R. A. 220. The rule is laid down in Massachusetts that "the desertion of one party, caused and justified by the misconduct of the other, is not the desertion of the other." Fera v. Fera, 98 Mass. 155, 156, citing Pidge v. Pidge, 3 Metc. (Mass.) 257. Section 1765 of the Code of Civil Procedure, which is a revision of section 13 of chapter 102, Laws 1813, provides that in actions of this character "the defendant may set up, in justification,

the misconduct of the plaintiff; and if that defence is established to the satisfaction of the court, the defendant is entitled to judgment"; and the courts have held that "such ill conduct of the complainant is not required to be the cause of the cruelty, in order to be available to the defendant, but such ill conduct is, in and of itself, a bar to the action." Doe v. Roe, 23 Hun, 19, 26. The parties to this action were married in 1882, and resided in the city of New York. In 1888 or 1889 the defendant in this action met, in the course of his business as an architect, one Carl Neuendorffer, and subsequently the two became friends, living as neighbors at 612 and 618 147th street. Neuendorffer had a family, which he sent to Europe in 1894, and they have not since returned. There is no evidence to show that there was ever any difficulty in the Deisler family until the fall of the year 1897. Mr. Deisler, the defendant, went to Europe during the summer of that year, and during his absence Neuendorffer took his meals at the Deisler home. It appears from the evidence that Mrs. Deisler, the plaintiff, was in the habit of visiting various resorts with him; that she had a key to his house, and that she made frequent visits to the home, both by day and by night; that she drank with him, both upon her own veranda and upon that of Neuendorffer, and generally conducted herself in such a manner as to excite comment among the neighbors. In November, 1897, the defendant began to be suspicious that matters were not right, and one evening, while Neuendorffer was visiting at his house, as was his nightly custom, defendant's attention was called to something going on in the hallway of the house, his wife not being in the room with them, and on making an investigation he discovered a note, acknowledged to have been written by his wife upon an envelope containing a letter to Neuendorffer from his daughter, of which the following is a translation, the original being written in German:

"Dear Carl: Well, there was a great scene last night. And he said to me I should clear out at once, and take my Hortense along. Olga was his child. 'Aber nit,' said I; and the boys, too, belong to me, and do not concern him. He was frightened, and asked 'Why?' I said because we with the three boys were not married. Whew, what a fury he was in, and I thought he would grip my throat. Well, to-morrow, 1½ o'clock, we will see each other. With many kisses and joy comes to you
"Your loving                                                                L.
—And will explain all—also about Marie—excuse [meaning pencil]."

In February, 1898, an action for an absolute divorce was instituted by the defendant against the plaintiff, and from the evidence produced upon this trial it is difficult to believe that he would have failed to secure a judgment in his favor. On March 11, 1898, the action for divorce was discontinued upon plaintiff's signing a letter, the terms of which were agreed upon by the attorneys of the respective parties, in which she says:

"I have given the matter of our proposed reconciliation considerable thought, and, after all, the trouble simply appears that you believe Mr. Neuendorffer and I have held improper meetings, and that I have done wrong in maintaining his acquaintance against your wishes. On the other hand, I maintain that nothing improper has taken place, and that I have done nothing harmful, unless it be having continued to visit his home, and meet him outside his house, against your wishes. As I have told you in the presence of both Judge

Lachman and Mr. Randel, I now promise you that all relations between Mr. Carl Neuendorffer and myself or the members of my family shall cease; that there be no social or other intercourse or correspondence between him and me or the members of my family; that I shall not arrange any meeting with him at any place whatsoever, and shall not agree to any such meeting; that I shall avoid meeting him; and if, by accident, we should ever happen to meet at any friend's house, I shall bring the meeting to a speedy close. I will also defer to your wishes, and have our children cease visiting Mr. Neuendorffer."

In spite of this promise, the evidence is overwhelming that the plaintiff continued to meet Neuendorffer without the sanction of her husband, and in June, 1898, being made aware of these meetings, the defendant left home, but was subsequently induced by a Mr. Haefelin, a mutual friend, to return, and another reconciliation was effected. Subsequently defendant moved his family to Brooklyn, and, although the plaintiff testified that she thought she did not see Neuendorffer over in Brooklyn until after the defendant had left her, she admitted that in the early part of the summer of 1899, while living in Brooklyn, she accompanied Neuendorffer to Ft. Lee. She says that this was after Mr. Deisler went away. But Mr. Hunt, who was employed by the defendant to watch his wife, testifies that on the 2d day of July, 1899, he "followed Mrs. Deisler from Brooklyn to Ft. Lee; two little girls were with her; at 125th street Mr. Carl Neuendorffer boarded the car," etc.,—detailing the journey to Ft. Lee, and from there to a place known as "Bender's Cliffside." On the 9th day of July he testifies to a similar trip, and again on the 13th day of August, a few days before the alleged desertion. We have passed hastily over the evidence, merely to show the continuation of the conduct on the part of the plaintiff, omitting the details, and to point out that the plaintiff comes not with clean hands asking for the interposition of a court of equity.

The learned court below appears to have disposed of this action upon the theory that it was necessary for the defendant to establish adultery on the part of the plaintiff subsequent to the reconciliation and the withdrawal of the action for divorce, but in this we are of opinion that the court erred. The provision of Code Civ. Proc. § 1765, is that "the defendant may set up, in justification, the misconduct of the plaintiff; and if that defence is established to the satisfaction of the court, the defendant is entitled to judgment." Upon a motion to strike out an allegation of a similar character in the complaint in Crow v. Crow, 7 Civ. Proc. R. 423, 425, which was an action for separation on the ground of cruelty, the court say:

"As to that part of the third defense which alleges conduct with McCoy calculated to excite the jealousy and irritate the feelings of the defendant, I am inclined to adopt the language of the chancellor in Hopper v. Hopper, 11 Paige, 46, 48, and hold 'that misconduct on the part of the plaintiff, which was calculated to irritate and provoke the defendant, or to excite his jealousy, or to alienate his affections from her, cannot be considered as useless and impertinent in an answer to a complaint which charges cruelty on his part.'"

In the case of Rose v. Rose, 52 Hun, 154, 4 N. Y. Supp. 856, the court cites Hopper v. Hopper, supra, and says:

"It seems to be assumed that the conduct of the wife and child may be of any character that they choose to make it, and the husband is bound to submit. This, however, does not seem to be the rule of law, nor is it the rule

of good morals; and a husband, when called upon to answer for his conduct towards his children, is entitled to all the circumstances attending this conduct and the reasons for it, in order that he may justify it. In the case at bar the defendant was refused this right both in respect to the plaintiff and to his child. A husband is not bound to keep under his roof a wife, no matter what her conduct may be; nor is he bound to leave his house, or submit to her conduct, whatever it may be."

This was a case in which the defendant was charged with cruelty, the alleged cruelty arising from the defendant's action in refusing access to his house of a person whom he believed to be unfit for the society of his wife and daughter.

In the case of Doe v. Roe, 23 Hun, 19,—an action for separation upon the ground of cruelty,—the court at special term found in favor of the plaintiff, who was conceded to have been guilty of adultery, the ill treatment growing out of the knowledge of the fact on the part of the defendant. In reversing the judgment, the court say that:

"In an action for separation, the language is general that ill conduct may be set up as a 'defense. Nor is there anything in the statute which indicates that this ill conduct must be of the same kind with that which forms the ground of complaint. For instance, the complaint might be based on the abandonment of the wife by the husband, and his neglect to provide for her. Could there be a better defense to such a charge than that the wife was an adulteress? If a husband, knowing of his wife's adultery, had left her on that account, and she had brought an action for a separation under subdivision 3 of section 51 [2 Rev. St. p. 147], would it not be absurd to say that the only defense which he might set up would be cruelty or abandonment on her part, and that he could not show that worst of all ill conduct, adultery? Now, section 53 allows ill conduct to be set up as a defense in any suit brought under section 51; and, therefore, whatever acts come within the term 'ill conduct' in an action under subdivision 3 of section 51 must be admissible in an action brought under the other subdivisions."

Actions for separation, whether based on desertion or cruelty, are subject, under the Code of Civil Procedure, to the defense of misconduct; and in cases of this character it is important that the court know what has been the conduct of the wife towards the husband, as well as what has been his conduct towards her, in deciding the question whether it is a proper case for a decree of separation. Hopper v. Hopper, supra. The evidence in this case, which was admitted without objection, establishes facts from which it is difficult to draw any other inference than that the plaintiff was guilty of adultery; that nothing but the adultery and the continued relations of the plaintiff with Neuendorffer, against the objections of her husband, have caused the desertion. Thus her misconduct has been the immediate cause of whatever the plaintiff has suffered. Until she violated her marriage vow, the parties had lived together happily; at least, there is no evidence to the contrary. Upon her, therefore, rests the blame for their dissensions, and for the final withdrawal of the defendant from the home. Doe v. Roe, 23 Hun, 25. It is not necessary to a defense of an action for separation that the defendant should establish adultery on the part of the plaintiff. Misconduct which would subject the defendant to humiliation and disgrace in the community, making him an object of popular contempt, would constitute cruelty on the part of the plaintiff which would forbid the interposition of a court of equity in her behalf. From the day

when Pliny said, "As the cuckoo deposits its eggs in the nests of other birds, so the Romans not unfrequently make mothers of the wives of their friends" (book X, c. 9), the world has looked with contempt upon the cuckold, or goat, the Greeks applying the latter appellation to the husband, the disposition of whose wife resembled that of a female of the same species (1 Voltaire, Philos. Dict. 18). To condemn the defendant in this action; to compel him to support this woman, who testifies that: "I arranged meetings with Mr. Neuendorffer at some place after this divorce suit was stopped. I met him. I meet him yet. I agreed to meetings with him that he suggested, when he sent me word to meet him. * * * Kept sending for me right along,"—is to work a cruel injustice upon a man whose only fault consists in refusing to live with a woman who persists in conduct which must expose him to the contempt of his fellow men. Whether the condonement of the offense which constituted the ground for the action for divorce, conditioned upon the promise of the plaintiff to reform her conduct, operates to close the door to this defendant of the defense of that adultery, is not, perhaps, material. Her conduct, subsequent to the condonation, in refusing to cohabit with the defendant, and in persisting in disregarding his wishes and her own promises, are sufficient justification for his leaving the home and refusing to support her; and he cannot be held to have deserted the plaintiff, within the meaning of that term as used in the law. There are authorities, however, which hold that there is always an implied promise on the part of the guilty party not to repeat the offense, and that, where this promise is violated, the right of action is revived. In Jefferson v. Jefferson, 168 Mass. 456, 460, 47 N. E. 123, the court say:

"To revive a cause of divorce for cruelty it is not necessary that the subsequent misconduct should be sufficient of itself to warrant a decree for divorce without regard to the previous cruelty. It is enough if there is such frequent unkindness or persistent ill treatment as to warrant a well-grounded belief that, if the cohabitation continues, the ill feeling will quickly break out in acts of gross cruelty."

See cases there cited.

In Gosser v. Gosser, 183 Pa. St. 499, 38 Atl. 1014,—an action by a husband for divorce for adultery,—it appeared that libelant had knowledge of many facts relied on in the suit as evidence previous to separation from his wife; but explanations which, while admitting gross improprieties of conduct, denied actual guilt, were made to him by her, and accepted as satisfactory. When explanations ceased, and the conclusion of innocence was no longer possible, he left her, and marital relations were not resumed. It was held that the defense of condonation was not established.

In Johnson v. Johnson, 14 Wend. 637, Chief Justice Savage, writing the majority opinion of the court of errors, says:

"We suppose the husband has been guilty of an offense against his wife for which she has a right to obtain a divorce. She afterwards cohabits with him. By doing so she virtually says, 'I forgive you this offense upon condition not only that you shall not repeat the offense, but upon the further condition that you shall hereafter treat me with conjugal kindness.' This is the condition implied by law, and for our present purpose is the real agreement, as much

so as if it had been expressed, or even reduced to writing. If, then, the condition be subsequently broken, is she not entitled to the penalty, whatever that penalty may be? Is she not entitled to be remitted to her former right of action, without reference to the nature of the judgment which shall be rendered in her favor? If condonation is a part of our law, and if the implied condition is such as I have stated it (and neither proposition is denied), then it necessarily follows that by a breach of that condition both parties are placed in the same situation as before the condonation. The effect of the condonation is destroyed by the breach of the condition, and the parties are in statu quo,—remitted to their former rights and liabilities."

In this case the husband had confessed adultery to his wife in the presence of witnesses. A reconciliation followed, but the husband continued to publicly associate with lewd and unchaste women, and to treat his wife with cruelty, and it was under these circumstances that the court used the above language. The case was decided by a divided court, the majority concurring with the chief justice; but, one of them suggesting that the fact of condonation was not established, the case has been questioned as an authority. Burr v. Burr, 10 Paige, 20, 35. In the subsequent case of Hoffmire v. Hoffmire, 3 Edw. Ch. 173, the vice chancellor says:

"The defendant admits he has been guilty of adultery, but claims, by way of defense or bar, the benefit of a condonation on account of subsequent cohabitation. The complainant, however, denies her knowledge of it, although it is evident she entertained strong suspicions of his infidelity at a time when she continued to cohabit with him. However, I consider the defendant's aftermisconduct, which caused him to be convicted of a felony, and sentenced to the state prison, operated as an abandonment of his duty towards his wife. He thus, by his own act, put it out of his own power to provide for her. It was, so far as she was concerned, and so far as her domestic happiness went, the reverse of conjugal kindness. In the case of Johnson v. Johnson, 1 Edw. Ch. 439, I had the question of condonation before me, and I considered that cruel treatment after condonation would revive a claim for divorce a vinculo matrimonii. This case went to the chancellor, and then to the court of errors. 14 Wend. 637. The opinion of Chief Justice Savage fully sustains the doctrine I put forth, but from a note which the reporter has added to the case it would seem that the question may still be considered as an open one. I am inclined to stand by my opinion, confirmed, as it is, by the chief justice."

This case was taken to the chancellor (7 Paige, 60), where it was affirmed, and a search of the authorities fails to discover that it has ever been questioned, and the case is cited as an authority in Merrill v. Merrill, 41 App. Div. 347, 350, 58 N. Y. Supp. 503. It is not, however, necessary to go to this extent in the case now before us. At the time of the alleged condonation the plaintiff denied in writing that she had been guilty of anything more than indiscretions, and disregard of the wishes of her husband, and these faults she promised to correct. The condonation cannot, therefore, be said to have been made of the offense of adultery. This was denied, and, although the defendant knew of the facts which were calculated to make him suspicious, he was not obliged to believe this evidence in the face of the denial of his wife. The rule laid down by subdivision 2 of section 1758 of the Code of Civil Procedure is that "the forgiveness may be proved, either affirmatively or by the voluntary cohabitation of the parties with the knowledge of the fact," and the uniform rule of the courts requires that some knowledge must exist sufficiently substantial upon which to base a belief, and usually there must be

some means of making legal proof of the commission of the offense before condonation will be implied from cohabitation. Merrill v. Merrill, supra, and authorities there cited. The defendant did not have this evidence at the time of the alleged reconciliation. He had the wife's confession (if his evidence is credited), but this she had subsequently denied, and she reiterated the denial in writing at the time of the so-called condonation; and it was not until some time subsequent to this that the ·plaintiff made her admission to others, and aided in establishing the previous misconduct. Under this state of facts it is difficult to understand how it may be held that the adultery of the plaintiff was condoned, while her subsequent conduct in denying herself to her husband, and secretly meeting Neuendorffer, visiting strange physicians on mysterious errands, the nature of which she refused to divulge, was clearly sufficient to warrant a court of equity in refusing relief to the plaintiff. It ap-pears from the undisputed evidence that the defendant is willing to take care of his children, and it would be anything but equitable to compel him to contribute to the support of this woman, whose favors are available only to a false friend of the defendant.

The judgment appealed from should be reversed, and a new trial granted, with costs to abide the final award of costs. All concur, except HIRSCHBERG, J., who dissents.

---

(34 Misc. Rep. 13.)

### PINE–COFFIN v. ERIE R. CO.

(Supreme Court, Special Term, New York County. February, 1901.)

INJUNCTION — STATEMENTS — INFORMATION AND BELIEF — SWORN DENIALS— KNOWLEDGE.

> Where, on an application by a stockholder for an injunction to restrain a railroad company from purchasing another railroad, all the statements in the complaint and moving affidavits, except as to the ownership of stock and residence of plaintiff, are on information and belief, and each of these statements which sets forth a fact is met by sworn denial on knowledge, the injunction should be denied.