JENNIE F. HAWKINS, Respondent, *v.* DANIEL A. HAWKINS, Appellant.

1. DEFENSE IN ACTION FOR SEPARATION — MISCONDUCT OF WIFE. The adultery of the wife is such misconduct as constitutes a defense in an action brought by her for separation and support, under sections 1762–1765 of the Code of Civil Procedure. The fact that the wife, in an action for divorce brought by the husband on account of such adultery, had successfully interposed the defense that the husband had been guilty of like misconduct does not change the rule. That the court refused to give the husband relief in that action is not inconsistent with his right to urge the same wrongful act as a defense in the separation action by the wife. In the separation action the right of action is based upon and limited by the statutory provision.

2. DECISIONS COLLATED — ECCLESIASTICAL LAW. Decisions on the subject collated, and extent to which the ecclesiastical law of England became part of the law of this state considered in opinion of the court per HISCOCK, J., and dissenting opinion, CULLEN, Ch. J.

*Hawkins* v. *Hawkins*, 121 App. Div. 896, reversed.

(Argued October 15, 1908; decided November 17, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 31, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John McCormick* for appellant. Adultery by the wife forfeits her rights arising from the marriage relation and frees the husband from his duties to her. (*Doe* v. *Roe*, 23 Hun, 19; *Hunter* v. *Boucher*, 3 Pick. 289; *Cooper* v. *Lloyd*, 6 C. B. [N. S.] 519; *Atkyns* v. *Pearce*, 2 C. B. [N. S.] 763; *For-*

*ster* v. *Forster*, 1 Hagg. Const. 144; *Bostwick* v. *Smith*, 34 Beav. 57; *Cully* v. *Charman*, L. R. [7 Q. B. Div.] 89; *Carney* v. *State*, 84 Ala. 7; *State* v. *Schweitzer*, 57 Conn. 539; *State* v. *Gunzler*, 52 Mo. 173.) The adultery of the plaintiff is a bar to relief of any kind and that too without reference to the guilt or innocence of the defendant. (*Burtis* v. *Burtis*, Hopk. Ch. 557; *Devanbagh* v. *Devanbagh*, 5 Paige, 554; *Griffin* v. *Griffin*, 47 N. Y. 134; *Brinckly* v. *Brinckly*, 50 N. Y. 185; *Bedell* v. *Bedell*, 4 Johns. Ch. 604; *Doe* v. *Roe*, 23 Hun, 19; *Uhlmann* v. *Uhlmann*, 17 Abb. [N. C.] 236; *Spahn* v. *Spahn*, 12 Abb. [N. C.] 169; *Crow* v. *Crow*, 7 Civ. Pro. Rep. 423; *Deisler* v. *Deisler*, 59 App. Div. 207.)

*Andrew J. Shipman* for respondent. The statute under which this case comes entitles the plaintiff to judgment in her favor. (*Gilbert* v. *Gilbert*, 5 Misc. Rep. 555; *Hawkins* v. *Hawkins*, 110 App. Div. 42.) The judgment in the divorce action and the facts found therein concerning the plaintiff, as well as the allegations of the answer herein concerning her, afford no justification for the defendant. (*Doe* v. *Roe*, 23 Hun, 19; *Wood* v. *Wood*, 2 Paige Ch. 108; *Beeby* v. *Beeby*, 1 Hagg. Eecl. 790; *Williamson* v. *Williamson*, 1 Johns. Ch. 488; *Weaver* v. *Weaver*, 74 App. Div. 591; *People* v. *Mitchell*, 2 T. & C. 172; *Barton* v. *P. J. Co.*, 17 Barb. 397; *People* v. *Shrady*, 40 App. Div. 460.)

HISCOCK, J. This action is one brought by the respondent to procure a judgment of separation from her husband, the appellant, and to compel suitable provision for her support and maintenance. Its determination will be governed by the application to rather unusual facts of sections 1762 and 1765 of the Code of Civil Procedure.

Section 1762 provides that a wife may have judgment of separation and for support for either of the following causes:
"* * *

"3. The abandonment of the plaintiff by the defendant.

"4. * * * the neglect or refusal of the defendant to provide for her."

The respondent alleged and has proved that at a certain date the appellant left her, and since then has refused either to live with her or support her, and on these facts she would be entitled to the judgment which was awarded to her in the court below.

But section 1765 provides that in such an action as this "the defendant may set up, in justification, the misconduct of the plaintiff; and that if that defense is established to the satisfaction of the court, the defendant is entitled to judgment."

Under this section the appellant alleged and has established beyond controversy that his refusal to live with and support the respondent immediately followed and was the result of his discovery that she had been guilty of adultery. On these facts, added to the others above stated, appellant unquestionably would be entitled to judgment dismissing the action, for it is settled that the adultery of the wife relieved the husband from the obligation to support her, and such misconduct is a defense to an action of this character. (*Doe* v. *Roe*, 23 Hun, 19; *Deisler* v. *Deisler*, 59 App. Div. 207; *People ex rel. Keller* v. *Shrady*, 40 App. Div. 460. See, also, Nelson on Divorce and Separation, § 429; *Decker* v. *Decker*, 193 Ill. 285, 294.)

But still further facts are established which it is claimed materially qualify the force of those last recited. It appears that the appellant was guilty of adultery before the respondent, although not known to the latter at the time of her offense, and that in an action brought by the former for absolute divorce the latter made a counterclaim based upon the appellant's wrongdoing, and the court on familiar principles refused to grant relief to either party.

Under these circumstances the respondent argues in support of her judgment that the appellant's misconduct somehow prevents him from successfully urging hers under section 1765 as a defense to this action, and especially that inasmuch as the court refused to dissolve the marriage obligation on account of the said mutual acts of adultery said obligation continues in full force notwithstanding those acts and as an incident thereto the appellant can be compelled to support his wife.

I am unable to agree with these contentions. In the first place, and disregarding for the moment the judgment in the divorce action, it is to be kept in mind that the respondent is not basing her action on general principles of law under which the court might be urged somehow to set off and balance against each other the mutual misdeeds of the parties and so leave the respondent with all her original marital rights and claims unimpaired. On the other hand, her right of action is based on and limited by the absolute statutory provisions which have been quoted. One of these in effect provides that even though she establishes the usual elements of an action for separation and support, she will not be allowed such affirmative relief based on the marriage contract which she herself has disregarded. It does not favor an assertion of marital obligations which is accompanied or preceded by their violation. This being so and it fully appearing that respondent had been guilty of misconduct which is made a bar under the statute to her recovery, I fail to see how it justifies or excuses her misconduct or changes the nature of her act or avoids the consequences thereof or contributes an element of support to her cause of action to prove that her husband also at some time has been guilty of a similar violation. And especially is this so where, as here, there is no claim that the latter violation, even as a matter of moral influence, conduced to or mitigated the evil of the former. It is also to be borne in mind that this is not a case where the husband has been continuing and living in profligacy while he cast his wife off for a single offense. Of course if the appellant were seeking affirmative relief his conduct would be important and subject to the strictest scrutiny, and no other rule should be applied to him than is being urged against the respondent. But he is not. The respondent alone is seeking legal relief and in my opinion the only material question relates to her act.

Neither do I perceive how the force of this reasoning and conclusion if otherwise correct is affected or impaired by the decree in the divorce action. On the other hand, the logic of that judgment which refused relief with respect to the mar-

riage obligation to the husband who had been guilty of violating it seems to aid the appellant rather than otherwise. Certainly if the respondent is permitted to maintain this action notwithstanding her adultery, she will be enabled to secure part of the very relief which was denied to her in the former action because of such adultery.

There was nothing in that decree which technically bars the appellant from urging the respondent's adultery as a defense in the present action. It refused to give him affirmative relief on account thereof in the former action because of his own similar fault, but that is not inconsistent with his right to urge the same act under the express provisions of the statute as a defense to the wife's request for affirmative relief in this action.

But it is urged that the court having refused to dissolve the marriage tie, all the obligations of that contract, including that of support of the wife by the husband, must remain in full force. And as sustaining this view reference is made to the expression in *Wood* v. *Wood* (2 Paige Ch. 108) that "if both parties (to a divorce action) are guilty, neither has any claim to relief; and they are in that case suitable and proper companions for each other," and to the remark in *Beeby* v. *Beeby* (1 Hag. Eccl. 790), "It is not unfit if he   *   *   * who has violated his marriage vow should be barred of his remedy; the parties may live together and find sources of mutual forgiveness in the humiliation of mutual guilt."

I do not attribute to these opinions and to the decree any such significance or effect as is claimed for them, but think that the only meaning legitimately to be deduced from them is that the court will not give affirmative relief to mutually guilty husband and wife by dissolving the marriage contract, but will leave them where it finds them subject to whatever burdens of that relation still remain, and the conclusion is not justified that such a decree amounts to an adjudication that all of the original obligations remain unimpaired. Independent of any statutory provision, it might be questioned whether a wife who has been guilty of adultery

may successfully insist that her husband shall live with or support her, even though the court has refused to dissolve the marriage relation because of his similar fault. Certainly the decree denying dissolution does not preserve or confer such right in view of the express provisions of section 1765, that the misconduct of the wife shall be a bar to her right to support, for of course the legislature has the undoubted right to annex this consequence to her misconduct, and necessarily the provision making her misconduct a bar to an action for support must apply to a case where there has been no decree dissolving the marriage on account of adultery. If there had been a decree of divorce there would be no occasion for the exemption of the husband from liability for support as a result of such misconduct.

Neither, in view of the statutory provision to which reference has been made, does it avail as an argument to say that the wife's right of dower and of administration on her husband's estate and possibly various other rights continue notwithstanding her adultery, so long as the marriage has been allowed to remain undissolved, and that it is not in harmony with the continuance of these rights that she should lose her right to support. This is a matter of statutory policy. It cannot be doubted that the legislature would have the power to cancel her right of dower and administration because of mere adultery without a decree of divorce founded thereon, and if it had so enacted I can hardly believe that she would have avoided the results of her misconduct by proving that at some time her husband had committed a similar sin. It has been expressly held otherwise in England. (*Bostock* v. *Smith*, 34 Beav. 57.)

Authorities are not wanting to sustain the proposition that, independent of any statutory provision such as we have, the destructive consequences to her conjugal rights of the wife's adultery are not prevented or compensated and avoided by similar fault of her husband.

*Govier* v. *Hancock* (6 Durnford & East, 603) was an action to recover for necessaries furnished to a wife living apart from her husband. It appeared, however, that she had com-

mitted adultery after leaving him, and it was held that this exonerated him from liability for her support, although he had first committed a similar act and had otherwise treated her cruelly.

In *Bostock* v. *Smith* (34 Beav. 57) it was held that the wife who left her husband and committed adultery came within the statute forfeiting her dower for such offense, even though she left her husband in consequence of his gross misconduct, "which was such as would justify, if anything could justify her act. But nothing could justify it."

In *Stimpson* v. *Wood and Son* (L. J. [57 Q. B.] 485) it was in effect held that a wife living in adultery lost all right of support, although her husband was doing the same thing.

In *Culley* v. *Charman* (L. R. [7 Q. B. Div.] 89) it was said by HAWKINS, J.: "I do not think there is any need to cite authorities to show that a husband is not bound at common law to maintain a wife who has been guilty of adultery and who is living apart from him."

In *Hope* v. *Hope* (1 S. & T. 94) it appeared that each party had sought divorce for the adultery of the other, and had been denied relief on account of their mutual misdeeds; that thereafter the wife applied for a decree, of restitution of marital rights, which in its important aspects was like the present case, an action to compel support. It was urged "that cohabitation is a duty resulting from marriage and that neither party can withdraw from cohabitation without the judgment of a court, which in this case the husband not only had not obtained, but having asked the proper tribunal to release him from that duty his prayer was rejected; and, secondly, that the guilt of each being the same their mutual delinquencies were compensated and both were restored to their original position as innocent parties." The court overruled both contentions.

And to the same effect are the cases of *Drummond* v. *Drummond* (2 Swabey & T. 274); *Otway* v. *Otway* (L. R. [13 P. D.] 141).

It may be said that these later English decisions are based

on the principles of the ecclesiastical law which have not been adopted in this country and, therefore, are not applicable. There may be controversy as to how far the ecclesiastical law has been adopted, and it may be conceded for argument that these decisions would not be useful in interpreting the meaning of our statutes. When, however, the words of a statute being plain, certain facts have been developed under it, we have a right to consider what effect another court exercising jurisdiction over the same general subject and governed by principles not unlike those embodied in our statute, has given to similar facts.

As was said by Judge FOLGER in *Brinkley* v. *Brinkley* (50 N. Y. 185, 190), " * * * though it has been held that the ecclesiastical law of England is not a part of the common law of that country, and is no part of the common law thereof adopted in this state * * * yet, when by our statutes any part of the jurisdiction exercised by these courts was given to our courts, the settled principles and practice of those courts became a precedent and a guide for our courts."

The case of *People ex rel. Keller* v. *Shrady* (40 App. Div. 460) has not been overlooked, wherein it is written by Judge BARRETT that in criminal proceedings against the husband for abandoning his wife it would not be a defense to show that the wife had been guilty of adultery, it also appearing that the defendant had been first guilty of similar fault which would prevent him from procuring a dissolution of the marriage. It is, however, to be noted that what was thus said was not necessary to the decision of the case, and, secondly, that it was expressly directed to the proposition that under such circumstances the husband would be bound not to permit his wife to become a " public charge." Independent of the Code provision and as a matter of public policy, there very well might be a distinction between proceedings by the guilty party for her individual benefit and those instituted in behalf of the People to prevent the burden of a public charge.

The judgments of the courts below should be reversed and a new trial granted.

CULLEN, Ch. J. (dissenting).   I dissent from the decision about to be made.   The statutory provisions now found in article 3, chapter 15 of the Code of Civil Procedure do not bar plaintiff's right to relief.   Both plaintiff and defendant have been guilty of adultery, as was determined in an action previously brought by the defendant against the plaintiff for an absolute divorce.   After the rendition of a decree therein, the defendant refused to live with the plaintiff or in any manner provide for her support.   By subdivision 4 of section 1762 of the Code, the wife is entitled to a decree of separation and maintenance where the husband neglects or refuses to provide for her.   Her *prima facie* right to relief is, therefore, conceded.   The sole question is as to the sufficiency of the husband's defense.   By section 1765, " The defendant may set up, in justification, the misconduct of the plaintiff; and if that defense is established to the satisfaction of the court, the defendant is entitled to judgment."   What is the misconduct as intended by this section?   Plainly only such misconduct as justifies the action or conduct of the husband in refusing to support her.   It is urged that unquestionably the plaintiff's adultery was misconduct on her part.   That is true, but the question is, was it misconduct towards her husband who himself had been guilty of a similar offense.   Doubtless every dictate of honor, morality and self-respect should keep a wife pure even when her husband has done wrong, but if her only obligation to chastity rested on loyalty due to an adulterous husband, the plaintiff would not be subject to censure from the most strict of moralists.   If the wife should commit an assault and battery on a third party or larceny and be sent to prison for either offense, it would undoubtedly be misconduct on her part, but would any one pretend that by reason thereof the husband was for ever afterwards relieved from the obligation of supporting her?   In some states imprisonment under sentence for a felony is a ground for divorce; not so with us. Therefore, the simple question presented in this case is whether the defendant remains under any obligation to support the wife after the commission of adultery, he himself having been

guilty of the same offense. It must be also borne in mind that there is here no claim that the plaintiff abandoned her husband's home and lived in open adultery, or that she is continuing adulterous intercourse. The evidence established a single act of adultery committed by the defendant in September, 1904, and one committed by the plaintiff in November of the same year. By reason of the mutual guilt a divorce was denied to either party.

In determining this question we must not be misled by the false analogy of ordinary contracts, and the argument that where both parties have violated a contract neither can claim any right thereunder. Though based on contract, as distinguished from religious sacrament, marriage is not a contract in the accurate sense of that term. In *Wade* v. *Kalbfleisch* (58 N. Y. 282) Chief Judge Church said: "It cannot be dissolved by the parties when consummated, nor released with or without consideration. The relation is always regulated by government. It is more than a contract. It requires certain acts of the parties to constitute marriage, independent of and beyond the contract. It partakes more of the character of an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community." The learned judge quotes with approval the declaration in *Ditson* v. *Ditson* (4 R. I. 87): "In strictness, though formed by contract, it signifies the relation of husband and wife, deriving both its rights and duties from a source higher than any contract which they can make."

Nor are we to be controlled by the decisions in England (which will be referred to hereafter), where both the law and public opinion view in very different lights unchastity in the wife and the same offense in the husband, and where even now under the Divorce Act of 1857, not only is distinction made between adultery by the wife and that by the husband, but a divorce may be granted to a party guilty of adultery. The question is to be determined in the light of the public policy of this State as declared in its statute law, which imposes the obligation of marital fidelity equally on the hus-

band and wife, which for a violation of that obligation grants the innocent party, whether wife or husband, the same right to relief, and where both parties have been guilty, requires them to remain husband and wife. The obligation resting on the husband to support the wife does not spring from contract, but arises from the marital relation and is imposed by law. It is not even within the power of the parties to contract to the contrary. Such was the rule of the common law, and it is expressly enacted in this state by section 21 of the Domestic Relations Law, " Husband and wife cannot contract to alter or dissolve the marriage, *or to relieve the husband from his liability to support his wife.*" (L. 1896, chap. 272.) When, therefore, the law says that man and wife who have each been guilty of adultery shall remain man and wife, it enacts that the marriage obligation shall continue between them in its full integrity. It is conceded that in all other respects, except that of support, the rights and obligations of the parties remain unaffected. On the death of the defendant the plaintiff will be entitled to her dower right in his real estate, and, if he dies intestate, to a share of his personalty. The defendant has a similar right of inheritance in case of the plaintiff's death intestate. If either one should be killed by the wrongful or negligent act of a third party, the survivor will be entitled to sue for damages for the death. In case of intestacy, the survivor will be entitled to take out letters of administration. Neither can adopt a child without the consent of the other. It is unnecessary to extend this enumeration of the respective rights of either party in the person and estate of the other. It is urged, however, in answer to this argument, that these are matters of statutory policy, and that the legislature could abrogate all these rights. This is undoubtedly true, but it is equally a matter of statutory policy that the adulterous husband must retain as his wife an adulterous woman, and as for the suggestion that the legislature could abrogate these rights, were it not for the provision in the State Constitution forbidding divorce except by judicial decree, the legislature might abrogate the marriage itself, for it is not a

contract within the protection of the Federal Constitution. ( *White* v. *White*, 5 Barb. 480.)

The English ecclesiastical cases, which take a contrary view of the obligation of the adulterous husband to support an adulterous wife, are of recent date, long subsequent to the Revolution, and, therefore, not evidence of the ecclesiastical law of that country as it existed at the time of our separation. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559, p. 576.) The earliest of these is *Hope* v. *Hope* (1 Swabey & Tristram, 94), decided in 1858. There it was held that an adulterous wife cannot obtain a decree for the restoration of conjugal rights against an adulterous husband. The learned judge who decided the case states that the question had never been determined in the courts of that country, and admits that the canon law, which, though not adopted in its entirety, is concededly the foundation of the English ecclesiastical law, was directly contrary to the conclusion which he reached. He further admitted that there were *dicta* of that eminent ecclesiastical judge, Lord STOWELL, evincing a different view. In *Proctor* v. *Proctor* (2 Hagg. Con. [Eng. Eccl.] 292), where a separation was refused by reason of mutual adultery, Lord STOWELL said : " It (the court), therefore, presumes, when it withholds its decree of separation, that the parties return to cohabitation ; all matters return to their former course, but with increased vigour ; the husband and wife live again on their former footing, and there is no anticipation of separate debts, or of the probability of a spurious offspring. That such is the doctrine of the Canon Law is most certain, the authorities are numerous and precise to that effect." The *Hope* case proceeded on two decisions of the common-law courts. The first was that of *Govier* v. *Hancock* (6 Term. R. 603 ; temp. 1790). The action was for board and lodging furnished to defendant's wife. The report thus states the case : " The defendant having committed adultery with a woman of the name of Bazely whom he had brought home, treated his wife with great cruelty, and finally turned her out of doors. Then the wife committed adultery, after

which she offered to return home, but her husband would not receive her; and this action was brought for her board and lodging subsequent to that time." It was held that the husband was not liable. In *Rex* v. *Flintan* (1 Barn. & Adol. 227) the defendant was convicted as a disorderly person in failing to maintain his wife by reason of which she became a charge on the parish. Both husband and wife had committed adultery. The conviction was reversed, the court holding that as the defendant was not civilly liable for the supply of necessaries to his wife, he could not be held a disorderly person for not supplying them. The Irish case of *Seaver* v. *Seaver* (2 Swabey & Tristram, 665) was decided prior to *Hope* v. *Hope*, but the decision is not noticed in the later case. The *Seaver* case was decided both in the Consistorial Court of Dublin and on appeal exactly the reverse of the *Hope* case to which it was entirely similar in its facts. The court there said: "The sentence is not merely that the parties shall live together, but its effect in substance is, that they shall fulfill all their matrimonial duties, of which fidelity to the nuptial bed is not the least important. I know that, according to the modern code of morals and feelings, it is hard for the husband to comply with such a sentence. According to this code a husband incurs no disgrace, and need feel no shame for his own adultery, while his honor is ruined totally by the adultery of his wife. The disgrace thus caused by another's guilt is capable of only one possible aggravation, viz., *if he forgives her.* This code cannot be recognized in a Court Christian; nor will a man, against whom adultery is charged and proved, be permitted to allege any reluctance to associate with an adulteress, because she happens to be his wife."

While the law in England as to judicial separations remains unchanged by the Matrimonial Causes Act of 1857, which first authorized the courts to decree a dissolution of the marriage tie, the practice in suits for absolute divorce is so entirely foreign to the law and policy of this State as to render the decisions under that statute of no value here. There a husband may obtain a divorce from his wife for her

adultery.  A wife cannot obtain a divorce for the adultery of
her husband unless it is accompanied by cruelty, abandonment,
or the adultery is incestuous.  The adultery of the plaintiff is not
a bar to a divorce for the adultery of the other party.  Under
the statute the courts may, but are not bound, to deny relief
for that reason.  Alimony seems to be in the discretion of the
courts and has been granted to a wife who has been divorced
for adultery.  A full collection of these cases can be found in
the work of Gwynne Hall on Divorce and Matrimonial Causes.

My learned associate, who writes for the majority of the
court, says : " Independent  of  any statutory  provision,  it
might be questioned whether a wife who has been guilty of
adultery may successfully insist that her husband shall live
with and support her even though the court has refused to
dissolve the marriage relation because of his similar fault."
From this intimation I dissent *toto cœlo*.  Its effect would be
to set up one standard of morality for the woman, another
for the man, a distinction which, whatever may be the view
taken of it by society, is expressly repudiated by the statute
law of this state by which adultery on the part of husband or
wife is equally made a crime.  I can only repeat the forcible
language of the court in the *Seaver Case (supra)* : " Nor will
a man, against whom adultery is charged and proved, be per-
mitted to allege any reluctance to associate with an adulteress,
because she happens to be his wife."  I do not say that the
commission of a single act of adultery on the part of the hus-
band gives the wife unlimited license to commit adultery at all
times thereafter and still compel her husband to support her, but
this is equally applicable to the wife, and a single act of adul-
tery on her part, possibly committed at a time  long past, and
sincerely repented of, should not enable the husband  to  cast
her off without support, though he may be living a life of con-
tinuous and gross profligacy.  The circumstances under which
an offense is committed, while they may not affect the  penalty
which the law imposes on its commission, may form a controll-
ing factor in determining the moral delinquency attributable
to the act.  The effect of the decision about to be made is *to*

put the law of this state on the same basis as that declared by
the King's Bench in the *Govier Case* (*supra*), that is to say,
that the adultery of the wife bars her right to support no mat-
ter how flagrant the misconduct of the husband may have been
in the same direction.   In the case before us the parties seem to
have equally sinned.   The plaintiff's right to relief, unless barred
by her misconduct, was conceded.   The burden was, therefore,
upon the defendant to show that his wife's misconduct was of
such a nature or so far exceeded his own in moral obliquity as to
justify him in turning her off.   No proof of the kind appears
in the record.   No finding to that effect has been made or
requested.   We have here the bare facts that the plaintiff com-
mitted an act of adultery and that the defendant also committed
an act of adultery.   These facts standing alone, I say, do not
justify the defendant's refusal to support his wife.

The judgment appealed from should be affirmed, with costs.

GRAY, EDWARD T. BARTLETT, HAIGHT and WERNER, JJ.,
concur with HISCOCK, J.; CULLEN, Ch. J., reads dissenting
opinion; WILLARD BARTLETT, J., not sitting.

Judgment reversed, etc.