MARY N. McKEE, Respondent, *v.* RALPH H. McKEE, Appellant.

First Department, May 4, 1934.

*John J. Kirby*, attorney for the appellant.

*H. James Hitching* of counsel [*Simons & Hitching*, attorneys], for the respondent.

UNTERMYER, J.   The action is by the respondent to procure a judgment of separation from her husband, the appellant, and for suitable provision for her support and maintenance.   The grounds upon which the plaintiff claims to be entitled to a separation are: *First*, on account of the defendant's cruelty, resulting on January 13, 1925, in the separation of the parties, and that after securing an invalid decree of divorce in the State of Nevada in September, 1931, the defendant entered into a void marriage with another woman whom he publicly represents to be his wife.   *Second*, because the defendant has failed and refused to provide for the support of the plaintiff.

The trial judge was of opinion that, except in relation to his subsequent alleged marriage, the defendant had not in any respect been cruel in his behavior to the plaintiff, but, on the contrary, that she had abandoned the defendant without cause on January 13, 1925.   Indeed, he expressed the view that the defendant was a considerate husband and devoted father.   He felt constrained, with obvious reluctance, to enter a decree of separation in favor of the plaintiff, because he considered the divorce secured in Nevada without personal service on the plaintiff to be void and, consequently, that the defendant's relations with his alleged second wife constituted cruel treatment of the plaintiff within the principle expressed in *Hofmann* v. *Hofmann* (232 N. Y. 215).   In that case it was stated that " if the adultery is open and notorious, flaunted in the eyes of the public or dragged into the presence of the blameless wife or husband, two wrongs arise out of the act: the adultery itself, which is so gross an offense against the marriage vows as in itself to lead to a dissolution of the marriage, and cruelty."

The record fully justifies the conclusion of the trial judge that at least until January 13, 1925, the defendant was in every respect considerate in the treatment of his wife and, in relation to his means, generous in providing for her support. Even after she had left him, he continued to provide for her, notwithstanding that his frequent attempts to effect a reconciliation met with no success.

In October, 1925, the plaintiff instituted against the defendant an action for separation in New York county, which came on for trial in January, 1927. Both parties, it would seem, desired to avoid the embarrassment incident to litigation of this character and through the intervention of a third party an agreement was made which is referred to in the record as the " united family agreement." This agreement, executed on January 24, 1927, was to continue in effect at least until July 1, 1928, when their daughter was expected to graduate from college. It provides for the discontinuance of the separation action and for monthly payment during the term of the agreement of a specified sum for the plaintiff's support. The children of the parties are to remain at school and college at the expense of the defendant and the plaintiff " agrees to discuss with first party [the defendant] their family affairs and in particular the possibility of a united family at least once in each six weeks." The circumstances surrounding and following the execution of the agreement establish quite conclusively that the defendant was insisting that the plaintiff should return to him but that the plaintiff continued to refuse. This appears not only from the testimony of a disinterested witness but from correspondence. It is confirmed also by the provision inserted in the " united family agreement " at the defendant's request that his wife would discuss with him, at least once in six weeks, the possibility of reconciliation.

In November, 1927, the defendant, then residing in New Jersey, instituted there an action for divorce against the plaintiff on the ground of desertion. For reasons not material here, that action failed. In June, 1931, the defendant removed from New Jersey to Nevada and there, on September 2, 1931, secured the decree of divorce which the trial court refused to recognize. The trial court in effect has held that no matter how delinquent the plaintiff may have been, she is entitled to a separation from the defendant, because, never having been divorced from her by any valid decree, he is openly living in adultery with another woman.

It is here, we think, the court below has misconceived the law. If the Nevada decree is void then, in an action by the plaintiff for divorce, her desertion would not have constituted a defense. (Civ. Prac. Act, § 1153.) But we are not required here to determine

the validity of that decree because the plaintiff chose to make the alleged adultery the basis for an action for a separation on the ground of cruelty and not of an action for divorce. Having elected to proceed upon this theory she is met by the objection that her own conduct would have entitled the defendant to maintain against her an action for a separation. (Civ. Prac. Act, § 1161, subd. 3.) By section 1163 of the Civil Practice Act these facts constituted likewise a defense to her action for a separation, for " The defendant in an action for separation from bed and board may set up, in justification, the misconduct of the plaintiff; and if that defense is established to the satisfaction of the court, the defendant is entitled to judgment." When it appeared, therefore, that the plaintiff had abandoned the defendant, the trial court should have dismissed the complaint regardless of the defendant's subsequent transgression, if such it be. In *Hawkins* v. *Hawkins* (193 N. Y. 409) the court said: " Her right of action is based on and limited by the absolute statutory provisions which have been quoted. One of these in effect provides that even though she establishes the usual elements of an action for separation and support, she will not be allowed such affirmative relief based on the marriage contract which she herself has disregarded. It does not favor an assertion of marital obligations which is accompanied or preceded by their violation. This being so and it fully appearing that respondent has been guilty of misconduct which is made a bar under the statute to her recovery, I fail to see how it justifies or excuses her misconduct or changes the nature of her act or avoids the consequences thereof or contributes an element of support to her cause of action to prove that her husband also at some time has been guilty of a similar violation." (See, also, *Mirizio* v. *Mirizio*, 242 N. Y. 74.)

It is suggested, however, that the " united family agreement " justified the plaintiff in residing separate and apart from the defendant. If this was its effect, then the defendant could not complain of the separation, to the extent at least that it continued after the agreement was made. But this was not the effect, nor was it the purpose, of that agreement. It was not the usual separation agreement which, as its most vital element, provides that the parties shall, or may, live separate and apart. Neither by the agreement nor in any other way did the defendant ever consent that his wife might leave him or remain absent from their home. Indeed, it is very clear that at the time of the agreement he was insisting that his wife return. As emphasizing that determination the agreement was drawn to include the provision, inserted at the defendant's request, that the plaintiff would discuss, from time to

time, " the possibility of a united family." By the agreement, therefore, the defendant lost no rights. He never consented to separation in the future; he never condoned the separation which had taken place. The fact that in the hope of reconciliation he agreed for a limited time to provide for the wife who had deserted him, does not strengthen her position.

Since the plaintiff was not entitled to a judicial separation, provision for support could not be made. (*Fein* v. *Fein,* 261 N. Y. 441; *Finlay* v. *Finlay,* 240 id. 429; *Davis* v. *Davis,* 75 id. 221; *Kamman* v. *Kamman, No. 1,* 167 App. Div. 423.)

The judgment should be reversed and judgment directed in favor of the defendant.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; GLENNON, J., takes no part.

Judgment reversed and judgment directed in favor of the defendant. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.