FANNIE MIRIZIO, by MARY C. MUCCI, Her Guardian ad Litem, Appellant, *v.* COSMO MIRIZIO, Respondent.

**Husband and wife — separation — abandonment — wife who without adequate excuse refuses to have ordinary marriage relations with husband cannot maintain action against him for abandonment and to compel support — failure of husband to keep promise to follow civil marriage by religious ceremony no excuse for repudiation of marriage contract — parties to lawful marriage contract may not modify its effect by private agreement between themselves.**

1. A wife who lives apart from her husband because she is unwilling to live with him in the ordinary relationship of husband and wife cannot maintain an action against him for abandonment and to compel his support of her. The refusal of husband or wife without any adequate excuse to have ordinary marriage relations with the other party to the contract strikes at the basic obligations springing from the marriage contract and amounts to legal misconduct which, under the provisions of section 1163 of the Civil Practice Act, is a defense to an action to enforce such obligations. (*Williams* v. *Williams,* 130 N. Y. 193; *Bohmert* v. *Bohmert,* 241 N. Y. 446, followed; *Risk* v. *Risk,* 202 App. Div. 299, overruled.)

2. Nor is such conduct by a wife, married by a civil ceremony, relieved of the feature of willful and inexcusable repudiation of her

marriage contract by an agreement which was made between her and her husband that such contract should not be consummated until a religious ceremony was performed, and the fact that though the wife was willing to have the ceremony performed and then consummate the marriage, the husband refused. This State as a matter of long-continued policy, has fixed the status of the marriage contract as a civil contract which when once executed becomes binding and carries with it certain rights, duties and obligations and the parties to such a contract lawfully and completely entered into may not modify its effect, postpone its consummation and lessen its undoubted and fundamental obligations by private agreements between themselves.

3. Authorities on the question whether a willful refusal of one party to a marriage contract to submit to ordinary marital physical relations with the other by and of itself amounts to a matrimonial desertion or abandonment collated and discussed.

*Mirizio* v. *Mirizio*, 212 App. Div. 524, affirmed.

(Argued October 29, 1925; decided January 22, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 15, 1925, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

*John McCormick* and *Charles F. Rudershausen* for appellant. The refusal of the court to find that the defendant had abandoned his wife is error. (*Ullmann* v. *Ullmann*, 17 Abb. N. C. 236; *Williams* v. *Williams*, 130 N. Y. 193; *Dunn* v. *Dunn*, 4 Paige, 425.) The defendant has proved no acts on the part of the plaintiff which justifies his refusal to support and his abandonment of the plaintiff. (*Brinckley* v. *Brinckley*, 50 N. Y. 185; *Hawkins* v. *Hawkins*, 193 N. Y. 409; *Doe* v. *Doe*, 23 Hun, 19; *Barber* v. *Barber*, 168 App. Div. 211; *Dies* v. *Winne*, 7 Wend. 47; *Risk* v. *Risk*, 202 App. Div. 299; *Southwick* v. *Southwick*, 97 Mass. 327; *Franklin* v. *Franklin*, 154 Mass. 515; *Watson* v. *Watson*, 52 N. J. Eq. 467; *Cowles* v. *Cowles*, 112 Mass. 298; *Cousen* v. *Cousen*, 4 Swab. & Tris. 164; *Orme* v. *Orme*, 2 Add. Ec. 823.)

*John J. Ryan* and *Matilda Spitzer* for respondent. A denial by a wife, in good health, of the right of intercourse to a husband, in good health, constitutes legal desertion, and as such is a valid defense to an action for separate maintenance. (*Waldhorn* v. *Waldhorn*, 165 Mich. 130; *Nordlund* v. *Nordlund*, 97 Wash. 475; *Franklin* v. *Franklin*, 154 Mass. 515; *Borden* v. *Borden*, 166 Cal. 469; *Lewis* v. *Lewis*, 167 Cal. 732; *Compton* v. *Compton*, 204 Ill. App. 629; *MacGrath* v. *MacGrath*, 103 Mass. 577; *Ringgold* v. *Ringgold*, 128 Va. 485; *Fleegle* v. *Fleegle*, 136 Md. 630; *Parmly* v. *Parmly*, 90 N. J. Eq. 490; *Baker* v. *Baker*, 99 Ore. 213; *Chandler* v. *Chandler*, 132 Va. 418.) The agreement claimed by the plaintiff to have been made by her with the defendant, to the effect that if she married him in September, they would not live together until Christmas, when a religious ceremony would be performed, is void. (*Blaechinks* v. *Blaechinks*, 130 N. Y. 497.)

HISCOCK, Ch. J. This action is brought under the provisions of section 1162 of the Civil Practice Act, alleging that the defendant as plaintiff's husband has abandoned and refused to support her and demanding judgment of separation with provision for support. The defense which thus far has been sustained is that the plaintiff has refused to live with the defendant and discharge her marital obligations and that, therefore, he has been relieved from any duty of support. There is little dispute of fact. Plaintiff and defendant were united in marriage by a civil ceremony but they were observers of the Catholic religion and, therefore, entered into an agreement that they would not live together or consummate the marriage until performance of a religious ceremony. The plaintiff has been willing and ready to have this ceremony performed and then consummate the marriage but defendant has refused to do this and, under these circumstances, the former has never lived

with her husband. Possibly the findings and uncontradicted evidence might be interpreted as supporting the conclusion that the plaintiff has been unwilling to occupy in any respect the status of a wife and live under the same roof with the defendant in the absence of this religious ceremony. But probably the fairer interpretation is that in plaintiff's mind sexual relationship with her husband will be the natural and necessary incident to living in the same home with him and that because she is conscientiously and religiously opposed to such relationship she elects to live entirely separate and apart from him unless and until the promised religious ceremony is performed when she would be willing to live with him. There is no doubt that she is governed by conscientious and religious scruples and, therefore, we are presented with the question whether a wife who from such scruples and under such circumstances and without any other reason whatever refuses to submit to ordinary marital relations with her husband can accuse him of abandonment and compel his support of her. There has been, it is true, some query whether the defendant has ever made a demand on the plaintiff that she live with him and submit to these relations, but I do not regard that as of any importance in our consideration of the case. Concededly the plaintiff is utterly and permanently unwilling to submit to sexual relations with her husband unless a religious ceremony is performed. That has been her attitude in the past; that is her unyielding attitude now, and with that understanding the mere circumstances of a formal and futile request on his part that she live with him in the full relationship of a wife would not add at all to the actual situation as portrayed by the findings and evidence. I shall first discuss the effect of this attitude on her part without any reference to the agreement for a religious ceremony made between the parties and then that agreement.

The question whether a willful refusal of one party to

a marriage contract to submit to ordinary marital physical relations with the other by and of itself amounts to a matrimonial desertion or abandonment has been the subject of widespread and long-continued debate with conflicting decisions. In England it has been held that it does not (*Jackson* v. *Jackson,* [1924] Probate Div. 19) and this view has been adopted in several of our State jurisdictions. (*Southwick* v. *Southwick,* 97 Mass. 327; *Prall* v. *Prall,* 58 Fla. 496; *Fritz* v. *Fritz,* 138 Ill. 436; *Lambert* v. *Lambert,* 165 Iowa, 367; *Stewart* v. *Stewart,* 78 Me. 548; *Segelbaum* v. *Segelbaum,* 39 Minn. 258; *Cunningham* v. *Cunningham,* 60 Penn. Sup. Ct. 622; *Pratt* v. *Pratt,* 75 Vt. 432; *Schoessow* v. *Schoessow,* 83 Wis. 553; *Albert* v. *Albert,* 137 Va. 1.)

In several of these cases, however, the decision was largely based on the peculiar wording of the statute relating to desertion. For instance in Iowa and Illinois the statute provides for " willful " desertion and the courts in those States held that in order to meet that provision there must be actual withdrawal from all marital relations and not repudiation merely of one. In Florida it is held that refusal of such marital intercourse does not of itself amount to " wilful, obstinate and continued desertion " and in Maine that such refusal does not amount to " utter desertion " and in other States (Wisconsin and Vermont) that such refusal does not constitute cruel and inhuman treatment or willful desertion, and in Pennsylvania the peculiar wording of the statute is controlling. In *Southwick* v. *Southwick* (*supra*) the decision again was largely based upon the peculiar wording of the Massachusetts statute, which, as originally enacted, provided that desertion would only arise when the guilty party had " utterly " deserted the other and it was held that although in later statutes the word " utterly " has been eliminated there was no intention to change the requirements of evidence necessary to establish desertion. The court also apparently

was influenced by the early English view that such refusal did not constitute desertion, although such view largely rested upon the fact that the remedy for desertion was a suit for a decree of restitution of conjugal rights and, enforcement of such rights not being possible in respect of sexual relations, the court would not regard such refusal as desertion. The full doctrine adopted in the *Southwick* case seems to have been questioned in the later case of *Anders* v. *Anders* (224 Mass. 438).

The contrary view that refusal to submit to such marital relationship does amount to desertion or abandonment has been held in the following jurisdictions: *Hayes* v. *Hayes* (144 Cal. 625); *Stein* v. *Stein* (5 Colo. 55); *Whitfield* v. *Whitfield* (89 Ga. 471); *Axton* v. *Axton* (182 Ky. 286); *Fleegle* v. *Fleegle* (136 Md. 630); *Campbell* v. *Campbell* (149 Mich. 147); *Graves* v. *Graves* (88 Miss. 677); *Brown* v. *Brown* (100 Atl. Rep. [N. H.] 604); *Parmly* v. *Parmly* (90 N. J. Eq. 490); *Wood* v. *Wood* (128 Atl. Rep. [N. J.] 418); *Perine* v. *Perine* (114 S. E. Rep. [W. Va.] 871); *Schoren* v. *Schoren* (214 Pac. Rep. [Ore.] 885).

A similar view has been taken by eminent text writers (1 Bishop on Marriage, Divorce & Separation, §§ 1676, *et seq.;* 1 Nelson on Divorce & Separation, §§ 54, 71. See, also, interesting note on this subject, Cornell Law Quarterly, April, 1925, p. 374.) Three States, California, Georgia and South Dakota, have gone so far as to make willful refusal to submit to such relations a statutory cause for divorce.

The question has never been decided by this court. In *Heermance* v. *James* (47 Barb. 120) the foundation was laid for holding that such refusal, without other circumstances, would amount to a desertion for it was there held that there might be desertion in the eyes of the law by one spouse of the other even though they continued to live under the same roof.

Perhaps it may fairly be said that the prevailing tendency in courts of this country is toward the view that

refusal of this marital relationship is such a breach of obligations as to amount to a desertion or abandonment. But we are not compelled to decide that question in its full scope in the present case. The defendant is not bringing suit for abandonment because of the conduct of his wife which has been described; he is setting up her conduct as a defense to the suit which she is bringing against him for abandonment and, therefore, the question is, disregarding for the moment the agreement to which we have referred, whether a wife who lives apart from her husband because she is unwilling to live with him in the ordinary relationship of husband and wife can maintain an action against him for abandonment and to compel his support of her. It is not a matter of affirmative relief to him because of such refusal but of utilization of such refusal as a defense against the attempt of the wife to secure benefits under the matrimonial contract. If we keep this aspect of the case in mind it is, in my opinion, an answer to much that is said concerning the failure of the husband to request the plaintiff to return to him, concerning his failure to offer to provide a home for her, and concerning inadvisability of allowing a husband to procure a divorce because his wife refuses to live with him in the ordinary relationship of a wife. The wife is the one who is asserting a right and seeking affirmative relief and the burden rests upon her, before she can demand benefits under the marriage contract, of showing that she is willing to discharge her obligations under it.

Of course, we recognize that marriage while a civil contract is, from its very nature, exempt from some of the considerations which might apply to an ordinary contract for the purchase and sale of property and, therefore, a party would not be held to violate his contract and to abandon his spouse for some inconsequential dereliction of duty which might effect a repudiation of an ordinary contract. But the refusal of husband or wife without any adequate excuse to have ordinary marriage relations

with the other party to the contract strikes at the basic obligations springing from the marriage contract when viewed from the standpoint of the State and of society at large. However much this relationship may be debased at times it nevertheless is the foundation upon which must rest the perpetuation of society and civilization. If it is not to be maintained we have the alternatives either of no children or of illegitimate children, and the State abhors either result. The mere fact that the law provides that physical incapacity for sexual relationship shall be ground for annulling a marriage is of itself a sufficient indication of the public policy that such relationship shall exist with the result and for the purpose of begetting offspring.

Therefore, in this case, we have the situation that one party while violating what must be regarded as a fundamental obligation of the marriage contract is endeavoring to compel the other party to that contract to live up to its obligations. Certainly this attitude of seeking to grasp the benefits of a contract with one hand while the party pushes away its duties and obligations with the other one cannot be sustained by any principles applicable to ordinary contracts. It cannot be upheld in the case of a marriage contract. The case, in my opinion, comes within the reasoning of *Williams* v. *Williams* (130 N. Y. 193). There it was held that a husband who had driven his wife away from him by harsh and unreasonable conduct would not be allowed to maintain an action for abandonment, and in this case the wife who refuses to discharge her obligations to her husband cannot be heard to find fault because she is reaping the natural results of her conduct.

The case also in my opinion comes within the principles upheld in *Bohmert* v. *Bohmert* (241 N. Y. 446). That action dealt with the case of a wife who was seeking to compel her husband to support her after she had deserted

6

him and it turned largely on the question whether she had avoided the effects of her desertion by displaying a proper willingness to return to her husband. The principle underlying the entire discussion was that a wife who left her husband, even though she may have been moved thereto by his unreasonable conduct, was compelled to show a willingness to return to him before she could exact support from him under the marriage contract which she had violated. Substantially the same principle is involved here. This plaintiff has refused to discharge her obligations under the marriage contract and without abating a particle from that attitude she now insists that the defendant must support her, and it is by the test of those circumstances that her right to succeed must be measured. Tested in that manner her position amounts to legal misconduct which, under the provisions of section 1163 of the Civil Practice Act, is a defense to her action to enforce such obligations. (*Hawkins* v. *Hawkins*, 193 N. Y. 409, 417; *Deisler* v. *Deisler*, 59 App. Div. 207.)

Of course we do not overlook the fact that in *Risk* v. *Risk* (202 App. Div. 299), by a closely divided court, it was held that the willful refusal of marital intercourse without withdrawal of general cohabitation did not either constitute abandonment or furnish a defense to the husband who, because of such refusal, refused to support his wife. Under the circumstances of this case and for the reasons stated we are not able to adopt the views expressed by the court in that case.

This leaves for consideration only the question whether plaintiff's conduct is relieved of the feature of willful and inexcusable repudiation of her marriage contract by the agreement which was made between her and her husband that such contract should not be consummated until a religious ceremony was performed. There is no opportunity for uncertainty about the scope and definiteness of this agreement, for the plaintiff herself testified that the arrangement between her and her husband was " I should

live with my people, he should live with his people, until
we go through the religious ceremony " and that agree-
ment modifying the marriage contract is the one upon
which the plaintiff now relies as an excuse for refusing to
carry out her marital obligations.    The plaintiff's plight
naturally excites sympathy.    No one questions that she
is actuated by thoroughly conscientious scruples and
principles and so far as the evidence and findings disclose
there is nothing to be said in commendation of the repudia-
tion of their agreement by the defendant.    And, of course,
as is suggested, our law should not be unnecessarily
construed in a manner which will be hostile to religion in
family life or to any other of those principles of moral,
ethical and considerate conduct which ought to govern the
marriage relationship.    But those, in my opinion, are in
no sense the considerations which are before us in this case.
Our State as a matter of long-continued policy, by many
statutes and innumerable decisions has fixed the status
of the marriage contract as a civil contract which when
once executed becomes binding and carries with it certain
rights, duties and obligations and the real question
presented to us in this case is whether the parties to such
a contract lawfully and completely entered into may
modify its effect, postpone its consummation and lessen
its undoubted and fundamental obligations by private
agreements between themselves.    In this particular case
the private agreement embodies religious observances and
from that standpoint is of high order.    In the next case
the agreement may be based on less meritorious and more
selfish considerations and it requires no fertile vision to
see where we may be led if the views now being urged
shall prevail, that the parties by private agreement may
permanently annul or indefinitely postpone the obliga-
tions which they assume when they enter into the marriage
contract and defeat the policy of the State and the views
which have so long and definitely prevailed in a right-
minded society.    In my opinion such a course as it is

now suggested we ought to set out upon of recognizing modifications of the marriage contract by private agreement would lead to disruption of that contract and disaster in the attempt to enforce it. The danger always is that a court may be led by what seem in some particular case to be equitable considerations into adopting some principle which when carried to subsequent and logical application to other facts leads to results which are unfortunate and unjust.

This plaintiff with her religious scruples concerning the consummation of a marriage contract had the situation in her own control. She was not obliged to submit to a civil marriage and then rely upon her husband to carry out a religious ceremony which would satisfy her scruples. I find no evidence that he unduly persuaded or misled her into this course. She could have had a religious ceremony first and thus avoided either discomfort to herself or impairment of her marriage contract. And while she has been drawn into an unfortunate situation by what seems to be the failure of her husband to keep his promise, her agreement in my opinion furnishes no just reason for allowing her in violation of all contractual considerations to compel enforcement of a contract which she, for inadequate legal reasons, refuses to observe. Public policy in such a vital matter as the marriage contract should not be made to yield to subversive private agreements and personal considerations. The State itself has unmistakably given expression to this view. While section 51 of the Domestic Relations Law (Cons. Laws, ch. 14) in providing that the husband and wife cannot contract to " alter or dissolve the marriage " refers to an agreement after the marriage has been contracted, of course its plain purpose and principle would be violated by allowing parties to make such an agreement for the purpose of altering the marriage contract just as it was being entered into.

For these reasons I think the judgment should be affirmed, without costs.

CRANE, J. (dissenting).   The plaintiff and the defendant were married in the borough and county of The Bronx, city and State of New York, on the third day of September, 1921.   The marriage ceremony was performed by the civil authorities.   The parties are man and wife under the law of this State and the obligations arising therefrom are as binding at law as if the ceremony were performed according to some religious rite.

The parties have never lived together because the defendant has failed and refused to provide a home for his wife.   This action is for support and maintenance.   The wife so far has lost.

The defendant admits in his testimony in this case that he has never offered a home to the plaintiff or provided her with one.   He apparently has an idea, and this case has proceeded upon the theory, that because the wife refused to have intercourse with him the marriage has never been consummated and he is not obliged to provide for her.   Such is not the law.   The refusal by the wife of marital intercourse is not sufficient to justify the husband in abandoning her and does not constitute abandonment on the part of the wife.   (*Risk* v. *Risk*, 202 App. Div. 299; *Franklin* v. *Franklin*, 154 Mass. 515; *Anonymous*, 52 N. J. Eq. 349; *Cunningham* v. *Cunningham*, 60 Penn. Super. Ct. 622; *Stewart* v. *Stewart*, 78 Me. 548; *Fritz* v. *Fritz*, 138 Ill. 436.)   The cases in the various States are fully reviewed in the *Risk* case.

There would be no end of litigation if the intimate relations between husband and wife regarding what have been termed " marital rights " were the subject of inquiry. Sickness, insanity and temperament have often deprived men of these privileges, and yet they have met bravely the obligations to support the woman whom they have chosen for a wife.   Refusal to have intercourse or inability to have it, except where it is due to some malformation making it physically impossible, is no ground for divorce and no defense to an action for support in this State.   A

different idea has evidently been in the minds of the defendant and his counsel. In the affidavits submitted on the motion for alimony and counsel fee which form a part of this record, the defendant states: " The sole tie that exists between the parties is the marriage ceremony at Borough Hall." (This " sole " tie is the only one the law requires.) " Deponent here admits that he has not supported his wife since July of this year, and declines the same on the ground that she has refused to be a wife to him. The plaintiff cannot succeed in this action, unless she shows that she is willing to live with defendant as husband and wife."

What the defendant here means is that the plaintiff refused to cohabit with him as his wife. He does not mean that she will not live with him in a home to be provided for her and take care of him and consort with him as his wife, otherwise. He has refused from the beginning to provide a home for her, or to support her until she consents to cohabit with him.

She desires a religious ceremony before giving this consent. With that we have nothing whatever to do. What may move her consicence is none of our concern. She is the defendant's wife; he is bound to support her, to provide her with a home or give her the means to live. If she refuse to live with him, he need not support her. If she consent to live with him and does live with him and perform her duties faithfully as a wife otherwise, the fact that she refuses to have intercourse is no justification to the defendant in abandoning her or turning her out.

Immediately after the ceremony the defendant brought actions,— three, so the affidavits state, to annul the marriage. In this effort he failed.

The testimony on the trial was very brief; it deals largely with what the parties have been willing or are unwilling to do. The main point contested apparently has been the unwillingness of the wife to cohabit. This, as I have stated above, is not the question in this case,

except as it may bear upon her willingness or refusal to live with the defendant. She swears that she is willing to live with the defendant if he provides her a home, and that he has never given her any support or offered to provide her with a place to live. As I read this record, the defendant will not do this unless the plaintiff consents to cohabit with him. His duty is to provide a home in the first instance, and take his wife into it. After that, matters may adjust themselves. A little tact and kindness upon the part of the defendant would probably remove the necessity for appearances in court. The position of the defendant is in my judgment unreasonable and unjustifiable. That he is the plaintiff's husband he does not deny. That he is bound to support her and provide her with a home the law makes emphatic. The defendant has failed and refused to provide this home. He tries to excuse his failure upon the ground that his wife *says* and *declares* that she will not cohabit with him. This is not a case where the man and wife are living together, and the wife so refuses after solicitation. The defendant has first failed in his duty as a husband. He justifies his failure and breakdown of all matrimonial obligations because of what his wife *threatens* to do. A little knowledge of womankind would be more helpful to defendant than a lawsuit. It is the proverbial privilege of women to change their minds. A little forbearance, gentleness and consideration for the feelings of others will accomplish what force will fail to do.

Besides, there is a large matter of public policy involved in a case like this. The man and wife are not the only ones interested. The public is largely concerned in this question of divorce and the dissolution of homes. Any judge who has held a Special Term in our large cities is acquainted with the large number of uncontested divorce cases, and has had the feeling that they are frequently based upon perjury. The number of divorces is a matter of public comment and criticism. While the courts must

grant decrees where honest testimony brings the case within our statutes, yet at the same time they should be careful not to let down the barriers or make it easy for deception. If the law is going to permit a man to get a separation because of non-intercourse, the next step will be to permit him to obtain a dissolution of the marriage upon the same ground where it has not been consummated. This would open wide the door for the annulment of marriages where absolute divorces could not be obtained upon the statutory ground. How is the court to determine whether the wife has refused the marital privileges, if both she and her husband are desirous of dissolving the marriage and she fails to appear in his action for annulment? It appears to me that we are going very far to encourage false and fraudulent claims and practices when we permit actions for desertion or annulment on the ground of non-intercourse, and start the courts to investigate whether a woman has or has not refused to cohabit. From an academic standpoint such a law may be reasonable; from a judicial-governmental standpoint it is impractical.

In view of the way in which this case has been tried and disposed of below, the judgment and dismissal of the complaint should be reversed and a new trial should be ordered. If upon this new trial the defendant still persists in his attitude and refuses to support his wife unless she cohabits with him, then judgment must be given in her favor, provided she is willing to live with him and perform all the other duties of a wife. If she refuses to live with him until a religious ceremony is performed, then judgment should be given for the defendant.

The judgment should be reversed, and a new trial ordered.

Lehman, J. (dissenting). The plaintiff seeks a judgment of separation from her husband and reasonable

provision for her support. Abandonment and failure to provide for her support are alleged as the basis of her prayer for relief. It is undisputed and the trial judge has found that the defendant has never supported the plaintiff, yet all relief has been denied to her and judgment dismissing the complaint on the merits has been granted and affirmed. Since under the provisions of subdivision 4 of section 1161 of the Civil Practice Act a wife may maintain an action for separation because of " the neglect or refusal of the defendant to provide for her," the judgment of dismissal on the merits seems to establish that in this case the defendant was justified in his neglect or refusal to support the plaintiff because of act or omission on her part. (Civ. Prac. Act, § 1163.)

Stipulation by the parties conclusively establishes in general outline those relations of the parties which fix their mutual rights and obligations and details are to some extent supplied by the plaintiff's uncontradicted testimony. The courts below have drawn their conclusions of law from undisputed facts. These facts create an unusual problem.

On September 3, 1921, the parties intermarried. The ceremony was performed by the deputy city clerk at the Borough Hall of the borough of The Bronx, New York city. Both parties were Catholics and prior to the civil ceremony they agreed that a religious service should be performed in a Catholic church after Christmas and that, as testified by the plaintiff: " I shall live with my people, he should live with his people until we go thru the religious ceremony." The understanding that the marriage should not be consummated until the religious ceremony was performed is undisputed. In January, 1922, the plaintiff asked the defendant to go through the promised religious ceremony. The defendant refused. It does not appear that the defendant ever asked the plaintiff to cohabit with him without a prior religious ceremony; in fact, the plaintiff testified that when the

defendant refused to take part in a church ceremony, he said, " he don't care to live with me," and it appears from the statement of fact made by the defendant's counsel at the opening of the trial that the defendant claims that his refusal to join in a religious marriage ceremony was due to resentment because the plaintiff took the part of her brothers in a quarrel they had with the defendant. The parties as a result have never lived together as man and wife and the marriage has not been consummated. The plaintiff asserts that she is not willing to have the usual marital intercourse with her husband until the promise to have the marriage blessed by the church, to which both parties belong, has been carried out. Solely because of this unwillingness the courts have refused to compel the husband to furnish support to her.

It can hardly be doubted that if we consider the problem presented solely as a question of equity and justice to the individual parties to the action and entirely apart from the social consequences of the positions they are assuming, the result of the decision is unfortunate. The parties have entered into a valid, enforcible marriage and by reason of that marriage the obligation to support the wife is imposed by law upon the husband so long as the wife does not fail or refuse to fulfill the obligations imposed by law upon her by reason of her wifely status. The husband definitely refuses to carry out that obligation and the courts have decided that his refusal is justified by his wife's demand that the civil marriage be followed by religious ceremony before the marriage is consummated by cohabitation. If so the justification must rest solely upon grounds of public policy; upon the view that decision sustaining the position of the wife would be in conflict with the principles that the legal obligations of the marriage contract may not be varied by private agreement and that these obligations are invariably binding despite difference of ethical or religious standards among

individuals. Justification for the husband's attitude cannot be found according to any possible standards of honesty or good faith. Concededly the wife entered into the marriage only upon the husband's promise that their union should receive the blessing of their church before the marriage should be consummated by cohabitation. When the marriage was contracted both parties contemplated that cohabitation without such blessing would be sinful. Having induced the plaintiff to enter into the marriage contract in reliance on his promise the defendant repudiates his promise. She is tied with bonds that may not be broken unless he is guilty of adultery. Of that she may not complain, for she voluntarily assumed those bonds; but she assumed those bonds intending to be a wife in fact and not in name only as soon as the religious ceremony was performed. By her husband's promise to join in such ceremony and his subsequent repudiation of his promise, he has placed her in the hideous position of being legally bound to a man with whom she may not live as wife without being guilty of what in her own conscience and in the eyes of the church of which both parties are members would constitute a sin. The defendant does not even ask the plaintiff to live with him without religious ceremony. Indeed the evidence would perhaps fairly permit the inference that he too would regard cohabitation as a sin which he would be unwilling to commit. He seeks to evade his obligation to support his wife; he finds the way for such evasion in the unwillingness of his wife to cohabit with him, although such unwillingness is based upon a ground which he could remove, and which in good conscience he is bound to remove even though his promise to do so is not enforcible in law. By repudiating his moral obligation to place the plaintiff in a position where in good conscience and according to the tenets of her religion she could become his wife in fact, he is permitted to escape his obligation to support her. Does any rule of public policy dictate such result?

Though upon this question my conclusion is different from that arrived at by the majority of the court, yet it rests upon substantially the same premises. I do not understand that the majority of the court have intended at this time to decide that in effect refusal by one party to a marriage to submit to ordinary marital physical relations constitutes matrimonial · desertion or abandonment. They have decided, and I think intended to decide, only that a refusal by this plaintiff in the present case to submit to ordinary marital physical relations, resulting in a consummation of marriage, without some excuse *which a court of law may recognize* would constitute " misconduct " within the meaning of section 1163 of the Civil Practice Act. I think that view is clearly correct. Even if we should hold hereafter when the question is directly presented that a willful refusal to cohabit would not, after the marriage is consummated, constitute such misconduct, yet it seems clear that obligation at least to afford opportunity for consummation of the marriage is an essential part of the marriage contract (See Civ. Prac. Act, § 1141) and that repudiation of this obligation by the wife would justify the husband's failure to support her. The question, however, still remains whether here there has been either repudiation of this obligation or refusal to carry it out without excuse cognizable by the courts.

At the outset, at the risk of seeming to repeat the obvious, I must point out that under section 1161 of the Civil Practice Act an action for separation may be brought for the neglect or refusal of the defendant to provide for his wife. Here the defendant never provided in any way for his wife. Section 1163 of the Civil Practice Act provides that " misconduct of the plaintiff " constitutes a defense to this action. Has there been such misconduct? If not I can see no defense. I use the word " misconduct " in a very broad sense. Perhaps there may be times when the conduct of the wife would not

ordinarily be described as misconduct, yet would furnish what might reasonably be regarded as excuse for failure by the husband to support. Whether under such circumstances we should say that the husband has been guilty of no breach of duty under section 1161 of the Civil Practice Act or that he has established a defense under section 1163 is unimportant. I use the term " misconduct " in a sense sufficiently broad to cover such cases; yet in all cases it must be remembered that never has there been any doubt that a husband is always bound to support his wife unless by his wife's act or omission he has been freed temporarily or permanently from his obligation. I have pointed out that the plaintiff's conduct which it is claimed deprives her of the right to support is the result of defendant's wrong; that there is not even proof of any refusal by the plaintiff to carry out her marital obligation, for no request to do so has been made to her by the defendant; that in effect the defendant is permitted by his own wrong to evade his own obligation. Upon only one theory may that result be sustained, if at all, viz., that judgment in favor of the wife would be a decision that because of private agreement of the parties, or because of the tenets of their particular religion the legal obligations of their civil marriage contract need not be fully carried out.

I accept without reservation or doubt the rule of law that the obligations of the marriage contract are fixed and may not be modified by private agreement or the religious tenets of the parties. I agree that if a reversal of the judgment of the courts below would in the slightest degree impair the legal effect of a civil marriage or permit religious ceremony to alter or increase the legal obligation of the civil marriage, then the judgment of the courts below must be affirmed. Our public policy is upon these points fixed and must be upheld by the courts.

In the present case the marriage performed in the Borough Hall between the parties constituted a valid

marriage. From the instant it was performed all the obligations inherent in a contract of marriage were as matter of law assumed by the parties. They could have chosen to enter into such contract in the manner directed by the rules or canons of their church; they may not be heard to assert that the obligations of marriage were to attach only when subsequent ceremony should be performed by priest according to the rites of their church. They might lawfully stipulate for a subsequent blessing upon their union to satisfy their own conscience or sense of fitness; the State will recognize no force in a stipulation that until the marriage received the sanction of the church its obligations are unenforcible. The defendant as the plaintiff's lawful husband is liable for the support of the plaintiff; the plaintiff as the defendant's lawful wife may not reject the fundamental obligations inherent in the marriage contract, and if she does reject them the defendant is justified in refusing support. We must determine in this case whether plaintiff's attitude constitutes such rejection.

An agreement not to consummate the marriage might well be considered as an agreement to " alter " the marriage forbidden both by our public policy and by the spirit if not the letter of section 51 of the Domestic Relations Law, but no agreement that the marriage shall not be consummated has been asserted here; no obligation to consummate the marriage is wholly repudiated or denied by the plaintiff. She recognized that obligation but asserts a right to postpone until such time as the defendant will comply with his promise to perform these preliminary rites which will change sexual intercourse from an act which according to her view is morally illicit, to one which is sanctioned by the guardians of her conscience. Even in those jurisdictions where refusal of marital intercourse is regarded ordinarily as equivalent to desertion, the courts are impelled at times to consider whether reasonable, moral or psychological factors have determined

such refusal. (See *Parmly* v. *Parmly*, 90 N. J. Eq. 490; also note in Cornell Law Quarterly, April, 1925, page 374.) Marriage should constitute a bond, but rigid rules of law which decree that religious, moral and other psychological factors which determine human conduct must be disregarded in the measurement of the performance of marital obligation will tend to make the marriage contract not a bond but a chain.

Formulation of exact rule which may be applied without difficulty to each case and which will define what constitutes sufficient justification, under varying circumstances, for refusal or neglect of a husband to provide support for his wife is impossible, yet at least it may be said that under varying circumstances the principle which always must guide the courts is that the permanence and immutability of the marriage relation must be sustained and vindicated and honest observance of its spirit must be required from both parties. Here the defendant does not even show in attempted justification that the plaintiff has ever refused to do anything he asked of her. So far as this record shows he himself may still share plaintiff's unwillingness to cohabit or even to live in the same apartment without a religious ceremony — yet for his own purpose he refuses to go through such ceremony. The plaintiff does not refuse to perform her marital obligation. She insists only upon her husband first carrying out his solemn promise to her. Is her refusal to submit her body to him until that time a wrong to him in his marriage relation when that relation was entered with understanding by both that such submission would be a sin which he would not require of her? Is her attitude unwifely when his refusal to carry out his promise is a willful wrong to her? May he be released of his obligation of support because, as the evidence shows, he wishes to make it impossible for her to live with him or to become his wife in fact without a sense of sin which he has agreed not to put upon her? The

obligations of the marriage contract are fixed by law, and disregard of obligations fixed by law may not be excused because performance is contrary to the tenets of a particular religion; yet certainly our law is not hostile to religion in family life and should not so construe obligation of the marriage contract as to compel performance of such obligation in a manner contrary to religious scruples which both parties recognized when they entered into the marriage. A determination that the husband in this case need not support his wife unless she is willing to live with him even without a religious ceremony does not result in the vindication of the validity of civil marriage or in the supremacy of its legal obligations; it results in the husband's successful evasion of the obligations of his marriage by his own wrong. Certainly where both parties are agreed that without a religious ceremony cohabitation is improper, the husband who refuses to have the religious ceremony performed in accordance with his previous promise, with purpose of evading marital obligation, should not be in a position to urge that the wife's unwillingness to cohabit without such ceremony constitutes such failure to perform her marital duties as justifies his refusal to support her. The defendant has induced the plaintiff to enter into the civil marriage relying upon his promise to join thereafter in a religious ceremony. Assuming that this promise is void the defendant still is bound in good faith as plaintiff's husband to refrain from insisting upon the performance of a marital obligation of intercourse until the steps have been taken which both parties contemplated at the time of the marriage to relieve such performance from what they regarded as sin. Even though the defendant should offer to cohabit without the promised religious ceremony, he could not change the fact that such cohabitation would, in plaintiff's conscience, constitute a sin, and not only is it within his power to satisfy his wife's conscience but in good faith and because of his own acts he is bound to

do so. A sense of sin is poor foundation for permanent marriage relation and a husband who demands consummation of marriage at the price of his wife's sense of virtue, and at the same time invites refusal of his demand by willful failure to carry out conditions which induced the wife to enter into the marriage, should not be permitted to urge that refusal as justification for his own failure to support his wife.

The judgment should be reversed and a new trial ordered, with costs to appellant.

POUND, MCLAUGHLIN and ANDREWS, JJ., concur with HISCOCK, Ch., J.; CRANE and LEHMAN, JJ., dissent in opinion; CARDOZO, J., absent.

Judgment affirmed.