ALBERT RUTSTEIN, Appellant, *v.* GERTRUDE RUTSTEIN, an Infant, by GERTRUDE ROGE, Her Guardian ad Litem, Respondent.

First Department, June 24, 1927.

Husband and wife — annulment of marriage — action brought by husband on ground of fraud — agreement by defendant to embrace Jewish faith and to be married by rabbi after civil ceremony — parties never cohabited — marriage is annulled.

The plaintiff's marriage to the defendant, which was not followed by cohabitation, is annulled on the ground that it was contracted through the false and fraudulent representations of the defendant in that the defendant agreed prior to a civil ceremony that she would embrace the Jewish faith, the religious faith of the plaintiff, and would be married by a Jewish rabbi after the civil ceremony, and that after the civil ceremony she refused to carry out the agreement and, in fact, never intended to do so.

MARTIN, J., dissents.

APPEAL by the plaintiff, Albert Rutstein, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of May, 1927, upon the decision of the court rendered after a trial at the New York Special Term.

*Jonah J. Goldstein* of counsel [*David Goldstein* with him on the brief; *Goldstein & Goldstein,* attorneys], for the appellant.

No appearance for the respondent.

MERRELL, J. The plaintiff brought action to obtain a decree annulling his marriage with the defendant upon the ground that the plaintiff was induced to enter into the marriage contract with the defendant by reason of false representations made by defendant

to induce plaintiff to consent to such marriage, and that there was no meeting of the minds of the parties.

The action came to trial at Special Term before a justice of the court without a jury. There was no appearance on the part of the defendant at the trial, and there was no appearance by the defendant, respondent, upon this appeal. At the trial the plaintiff testified that he and the defendant were married at Hoboken, N. J., on June 26, 1926, and that he is by religious faith an Orthodox Jew; that defendant is a Protestant Episcopalian. Plaintiff further testified that about four or five days before his marriage to the defendant he had spoken to her and asked her about getting married, and explained to her that on one condition only would he marry her, and that was that she embrace the Jewish religion and take up the faith and be married by a rabbi; and that defendant told plaintiff that she would do so, as she loved him, and in order to make the plaintiff happy, in case there were any children, to bring them up in the Jewish faith; and that in reliance upon such statement and promise the plaintiff consented to such marriage, and the parties were married by a justice of the peace at Hoboken, N. J. Plaintiff testified that he absolutely relied upon the statement of the defendant that she would embrace the Jewish faith, and that a ceremonial marriage would be performed by a Jewish rabbi. Plaintiff further testified that about three or four days later he spoke to the defendant and asked her whether she was going through with her promise, as he wished to tell his folks about it, and that the defendant refused and stated to plaintiff that she had not had any such intentions in the first place. Plaintiff testified that he then told the defendant that if she had told him that in the beginning, he would never have consented to be married, as it was expressly stipulated that the plaintiff would not marry out of his faith, otherwise than her taking up the Jewish religion and being married by a rabbi. Plaintiff testified that the marriage between the parties was never consummated by cohabitation. Testimony corroborating that of the plaintiff was given by a brother and by an uncle of the plaintiff, who testified as to conversations had with the defendant subsequently to the performance of the civil marriage ceremony at Hoboken, wherein the defendant was requested to comply with her promise made to the plaintiff, and that the defendant refused to embrace the Jewish religion and stated to the witnesses that she never had any intention of so doing when she had promised the plaintiff, and that she would not be married by a Jewish rabbi.

Upon the testimony the court rendered its decision whereby the court found and decided that the complaint did not state facts

sufficient to constitute a cause of action, and directed the dismissal thereof. The court's decision was based upon the case of *Mirizio* v. *Mirizio* (242 N. Y. 74), and the judgment appealed from dismissing the complaint was directed to be entered.

I am of the opinion that the testimony presented by the plaintiff was sufficient to justify the annulment of his marriage with the defendant, and that the court erroneously dismissed the plaintiff's complaint. The case of *Mirizio* v. *Mirizio*, upon which the decision of the Special Term was based, is clearly distinguishable from the case at bar and furnishes no authority for a dismissal of the plaintiff's complaint. It appears from the allegations of the complaint and from the undisputed testimony at the trial that plaintiff's consent to the marriage of the parties was procured by the fraudulent representations and promises of the defendant, and that the plaintiff was induced to enter into a marriage contract by defendant's assurance that she would embrace the Jewish faith and be married by a Jewish rabbi; that the marriage of the parties was never consummated by cohabitation.

Section 1139 of the Civil Practice Act provides that " An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force, duress or *fraud* may be maintained at any time by the party whose consent was so obtained." The section provides that a marriage shall not be annulled on the ground of fraud if it appears that at any time before the commencement of the action the parties voluntarily cohabited as husband and wife with full knowledge of the facts constituting the fraud. The present section 1139 of the Civil Practice Act is identical with former section 1750 of the Code of Civil Procedure. The decisions in this State have uniformly held that a marriage may be annulled for *any* fraud or deception which would invalidate or authorize the cancellation of *any* contract. (*di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467; *Svenson* v. *Svenson*, 178 id. 54.) In the *di Lorenzo* case the Court of Appeals held that the fraud upon which an annulment of a marriage could be decreed under the statute must be material in inducing the parties to enter into the contract. Referring to the statute providing for the annulment of a marriage contract induced by fraud, the Court of Appeals said (at pp. 471, 472):

" This language is broad and warrants but the one reasonable construction, that the fraud must be material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage.

" * * * The free and full consent, which is of the essence of all ordinary contracts, is expressly made by the statute necessary

to the validity of the marriage contract. The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract, if he knew that a material representation, entering into the reason for his consent, was untrue. *There is no valid reason for excepting the marriage contract from the general rule.* \* \* \*

" Our attention has been called to cases in the courts of this State and of other States, which seem to hold a different doctrine upon the subject of the judicial annulment of a marriage contract. Whatever may be said in explanation, or in differentiation, I think it is sufficient that we rely upon the plain provision of our statute and upon the application to the case of a contract of marriage of those salutary and fundamental rules, which are applicable to contracts generally when determining their validity. If the plaintiff proves to the satisfaction of the court that, through misrepresentation of some fact, which was an essential element in the giving of his consent to the contract of marriage and which was of such a nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage." (Italics are the writer's.)

The evidence in the case at bar clearly establishes that the marriage was induced through a misrepresentation on the part of the defendant, and that she, at the time, had a preconceived determination that she would not keep her promise and embrace the Jewish faith and be married by a Jewish rabbi. The evidence is full and complete that, except for such promise on the part of the defendant, the plaintiff never would have consented to marry the defendant. It, therefore, appears that plaintiff's consent was induced by fraud, and that by reason of such fraud there never was any meeting of the minds of the parties and they never entered into any valid contract. The essential element of the proofs was that the plaintiff's consent to the marriage was obtained by fraudulent representations of such a nature as to deceive an ordinarily prudent person, and who, relying thereon, has been induced to enter into a contract. Judge GRAY, writing for the Court of Appeals in *di Lorenzo* v. *di Lorenzo* (*supra*), said (at p. 474) with reference to the decision of the Court of Appeals in *Blank* v. *Blank* (107 N. Y. 91), that: " In affirming the judgment in favor of the defendant, it was said by Judge RAPALLO, in the opinion, that, ' whether the marriage between the defendant and the plaintiff was legal, or illegal, as matter of law, the fraud, by which she was

charged with having induced the defendant to enter into the contract, was sufficient to justify the court in setting it aside, and she does not in any manner attempt to deny that she was guilty of the fraud charged.'"

The precise question presented upon this appeal was decided by this court in the case of *Watkins* v. *Watkins* (197 App. Div. 489). The facts in the *Watkins* case are identical with the facts in the case at bar. In that case the defendant requested the plaintiff to marry him, and the plaintiff refused to consent except upon condition that the marriage ceremony should be performed according to the Jewish religion and rites and by a rabbi, and the defendant agreed that such marriage ceremony should be performed after a civil ceremonial marriage. The promise of the defendant was not alone to the plaintiff but to her mother upon obtaining the mother's consent to the marriage of the parties. Plaintiff and the defendant met at the City Hall, accompanied by their respective mothers, and obtained a marriage license, the plaintiff's mother signing a consent to the marriage, and the marriage ceremony was thereupon performed by an alderman of the city of New York. The plaintiff was eighteen years of age and the consent of her mother was, therefore, unnecessary, although required by the city clerk. After the performance of the civil ceremony of marriage by the alderman, the defendant was repeatedly requested to keep his promise for a Jewish ceremonial marriage. He refused to do so, and the parties separated, the plaintiff returning to her mother's home. The civil marriage of the parties, as in the case at bar, was not consummated by cohabitation. Upon such testimony the trial court found that the plaintiff was induced to marry the defendant on his promise that the civil marriage was to be followed within a period of two or three days by a ceremonial marriage by a Jewish rabbi in accordance with the rites of the Jewish faith, and that such promise was made by the defendant with intent to deceive and defraud the plaintiff, and with the intent on the defendant's part not to actually do the same or have such ceremonial marriage performed; that the consent of the plaintiff to the civil marriage was obtained through fraud and deceit, and that the plaintiff, in consenting to the civil marriage, relied upon the promise of the defendant to have the same followed by a ceremonial marriage in accordance with the Jewish religion. This court held that fraud thus perpetrated upon the plaintiff by the defendant justified the annulment of the civil marriage. No appeal was taken from the decision of this court in *Watkins* v. *Watkins*, and, so far as I am able to discover, that decision has never been overruled or questioned by the courts in any respect.

The action of *Mirizio* v. *Mirizio,* upon the authority of which the justice presiding at Special Term dismissed the plaintiff's complaint herein, is clearly distinguishable from the facts before us upon this appeal. The *Mirizio* action was brought by the plaintiff wife under the provisions of section 1162 of the Civil Practice Act to obtain a decree of separation from the defendant, her husband, with a provision for her support, because of the alleged abandonment and failure of her husband to provide for her. The plaintiff and defendant were civilly married. Both parties were of the Roman Catholic faith, and it was agreed between them, following such civil marriage, that they would not live together or consummate such marriage by cohabitation until the performance of a religious ceremony in accordance with the Roman Catholic faith. The plaintiff was willing to enter into such ceremonial marriage and requested that the defendant join her in having a religious ceremony performed by a Roman Catholic priest. This the defendant refused to do. It fairly appears that the real cause of the defendant's refusal in this respect was that the plaintiff had taken the part of her brothers in some quarrel which they had had with the defendant. The plaintiff testified that when the defendant refused to participate in the religious ceremony which had been agreed upon, the defendant said that he did not care to live with the plaintiff, or, in the language of the plaintiff, that the defendant said in response to her request: " He don't care to live with me." The plaintiff never lived with her husband after marriage. The husband failed to provide for her and she brought action for a separation, alleging abandonment and failure of the defendant to support and provide for her. The trial court denied the plaintiff the relief sought, and upon appeal to this court the judgment of the trial court was affirmed, this court holding, in effect, that the evidence at the trial was insufficient to sustain the plaintiff's allegation of abandonment; that there was no abandonment of the plaintiff by the defendant, and that the plaintiff refused to live with the defendant and that such refusal relieved the defendant of any obligation to support the plaintiff. On appeal to the Court of Appeals the decision of this court was affirmed (*Mirizio* v. *Mirizio,* 242 N. Y. 74). It did not appear in the *Mirizio* case that the plaintiff was induced to enter into a civil contract of marriage because of the representation or promise of the defendant that the parties would later be married by a priest in accordance with the religious faith of which they were members. Indeed, the decision of the Court of Appeals is predicated upon the fact that the civil contract between the parties was lawfully entered into. Chief Judge Hiscock, in the prevailing opinion of the Court of Appeals

(at p. 83), wrote: " Our State as a matter of long-continued policy, by many statutes and innumerable decisions has fixed the status of the marriage contract as a civil contract which when once executed becomes binding and carries with it certain rights, duties and obligations and the real question presented to us in this case is whether the parties to such a contract *lawfully and completely entered into* may modify its effect, postpone its consummation and lessen its undoubted and fundamental obligations by private agreements between themselves." (Italics are the writer's.) And, on page 84 in the same opinion, Chief Judge HISCOCK further says: " I find no evidence that he unduly persuaded or misled her into this course. * * * And * * * her agreement * * * furnishes no just reason for allowing her in violation of all contractual considerations to compel enforcement of a contract which she, for inadequate legal reasons, refuses to observe."

It is, therefore, plain, from the language of the prevailing opinion in the Court of Appeals, that an entirely different question was presented from that now before this court. There the evidence did not show that the plaintiff was induced to enter into a civil marriage through any fraud, or that she was misled into consenting thereto, which is the ground upon which the plaintiff is seeking relief in the case at bar. I think the decision of this court in *Watkins* v. *Watkins* (*supra*) is decisive of the present appeal. There, as here, the action proceeded upon the theory that there never was any lawful contract created between the parties, and that the minds of the parties never freely met; that the plaintiff would not have consented to the civil marriage ceremony except for the fraudulent representation of the defendant upon which he relied and which the evidence shows the defendant never intended to keep. The *Mirizio* case was for separation and was based upon an existing contract and in furtherance thereof. Relief was denied the plaintiff because, having breached the contract herself, she could not recover. Here the plaintiff asks annulment for fraud and deception and upon the ground that there never was any lawful contract of marriage between the parties.

The judgment of the Special Term should be reversed, and judgment granted the plaintiff annulling the marriage of the parties.

FINCH, MCAVOY and PROSKAUER, JJ., concur; MARTIN, J., dissents.

Judgment reversed and judgment granted the plaintiff annulling the marriage of the parties. Submit order containing findings of fact and conclusions of law.