EULAH H. VILLANI, Plaintiff, *v.* ANTHONY J. VILLANI, Defendant.

Supreme Court, Equity Term, Monroe County, April 18, 1955.

*Arthur E. Rosenberg* for defendant.

*Theodore Solomon* for plaintiff.

SARACHAN, J. After various motions by the parties in the course of the trial, the court was finally presented only with an action for annulment by the defendant against the plaintiff upon the ground that the defendant had consented to the marriage by reason of the fraudulent misrepresentation of the plaintiff.

The defendant maintains that the plaintiff fraudulently represented to him that any children born of the marriage would be baptized in the Roman Catholic Church and would be reared

in the faith of that church. He alleges that the plaintiff, at the time of making this representation, never intended to have her children baptized in the Roman Catholic Church or reared in the Roman Catholic religion.

He further claims, according to his own testimony, that he did not discover the fraud until December 23, 1954, when the plaintiff in one of the repeated discussions they had about baptizing their child said, for the first time, that she had never intended to have her son baptized in the Catholic Church.

These parties were married on December 19, 1945. A child was born to them on June 21, 1949, and at the time this action was commenced, the child was about five and one-half years old. Before the parties were married they both signed a document which was produced in evidence and in which in substance they agreed to have their children baptized in the Roman Catholic Church and reared in the Roman Catholic religion. The defendant testified that when the son was about four weeks old he said that the child should be baptized in accordance with the agreement but that the plaintiff stated the child was too young.

The defendant further testified that he repeated the request that the child be baptized as agreed on a number of occasions, but that his wife always said the child was too young. When the child was two and one-half years old he took him to Catholic church service twice. When the child was four, the defendant took him to Protestant Sunday School, and also took him to Catholic Church over a period of three months. The plaintiff said that the child was not happy in church, and the defendant thereupon stopped taking him.

The defendant further testified that during the course of the various arguments between the parties, the plaintiff said to the defendant that the Catholic Church "was no good" and on another occasion she made extremely disparaging remarks about Catholic priests.

In spite of this history, the defendant continued to live and cohabit with the plaintiff until December 23, 1954, when he claims he discovered for the first time that she had never intended to keep her promise with regard to the children.

It is well established that a promise by one of the parties to a marriage that a civil ceremony will be followed by a religious ceremony, which promise was never intended to be kept, constitutes sufficient grounds for annulment when the parties have never cohabited. (*Rubinson* v. *Rubinson*, 110 Misc. 114; *Rosza* v. *Rosza*, 117 Misc. 728; *Watkins* v. *Watkins*, 197 App. Div. 489.)

It has likewise been repeatedly held that a promise by a party

to a marriage to become converted to the faith of the other party, which promise was never intended to be kept, is likewise ground for annulment. (*Rutstein* v. *Rutstein,* 221 App. Div. 70; *Williams* v. *Williams,* 194 Misc. 201.)

In the *Williams* case (*supra*), the plaintiff, a Roman Catholic, refused to marry the defendant because he was not of her faith. In order to induce her to marry him, the defendant represented to the plaintiff that he would become a convert to Roman Catholicism and would live and practice the Catholic faith. The defendant took instructions from a Roman Catholic priest and was subsequently baptized in that faith. Thereafter the parties were married. For a short while the defendant ostensibly complied with the practice of Catholicism. However, after a time he refused to go to church and insisted on the use of contraceptives in his marital relations, to which the plaintiff refused to consent. He soon, in a discussion with the plaintiff and others, stated that he had never intended to accept the Catholic faith and that his promise to do so was made solely for the purpose of inducing the plaintiff to marry him. The plaintiff thereafter had no marital relations with the defendant and brought an action for annulment on the ground of fraud. The annulment was granted.

There appears to be only one reported case substantially like the case before this court, *Martin* v. *Martin* (68 N. Y. S. 2d 41). In that case the alleged fraudulent misrepresentations were almost identical with those made in the present case. The court did not pass upon the question as to whether such misrepresentations were fraudulent, but held that even assuming that they were, the plaintiff's voluntary cohabitation with the defendant, after full knowledge that the defendant never intended to carry out his promises, barred him from the relief sought.

In this case the defendant would not marry the plaintiff unless and until the plaintiff had signed a document required by the Catholic Church to the effect that any children born of the marriage would be baptized and reared in the Roman Catholic faith. It would appear that such a representation and promise is a very material one to an observant Roman Catholic since it is concerned with one of the most vital elements of marriage and family life — that is, the manner of bringing up the children of the marriage. If, at the time of making such a representation and promise, a party to the marriage never intends to keep the promise, it would appear to be a fraudulent misrepresentation of a material fact and sufficient ground for annulling the marriage provided, of course, that as soon as the aggrieved party

discovers the fraud he refuses to cohabit with his spouse and asserts his right to an annulment within a reasonable time.

Has the defendant in this case met that test? For five and one-half years, even assuming the truth of his own testimony, he continued to live with the plaintiff as husband and wife in spite of her repeated refusal to have their child baptized as agreed.

He himself rarely took the child, even when older, to a Catholic Church, and when the boy was four, stopped taking him entirely, upon his wife's say-so.

If there was nothing else to indicate well before December 23, 1954, that his wife had never intended to have her children baptized and brought up Catholic, he certainly knew, or should have known, when she made disparaging remarks about the Catholic Church and Catholic priests. Yet in spite of that he continued to cohabit with her until about the time when she started a separation action against him in the latter part of December, 1954.

It is clear to this court that the defendant voluntarily cohabited with the plaintiff after he had full knowledge that when she promised to baptize and rear her children as Roman Catholic, she never intended to keep that promise. Under those circumstances he is barred from procuring an annulment.

The defendant's counterclaim for annulment is therefore dismissed. The plaintiff's action for separation and the defendant's counterclaim for separation both having been withdrawn, judgment may be entered dismissing the plaintiff's complaint and dismissing the defendant's counterclaim.