■ WILLIAM DIEMER, Appellant, v. GILBERTE DIEMER, Respondent.— In an action by a husband for a separation and for a judgment restraining his wife from violating an alleged prenuptial agreement that the child of the parties would be raised in the Protestant faith, the wife counterclaimed for a separation and custody of the child. The judgment dismissed the complaint and the counterclaims, awarded the custody of the child to the wife with rights of visitation to the husband, and directed him to pay $15 a week for the support of the child. The husband appeals from so much of the judgment as dismissed the complaint, denied him custody of the child and denied his prayer for relief restraining respondent from violating the alleged prenuptial agreement that the child would be raised in appellant's religious faith. Judgment, insofar as appealed from, affirmed, without costs. No opinion. Nolan, P. J., Beldock, Ughetta and Hallinan, JJ., concur; Wenzel, J., dissents and votes to modify the judgment by striking therefrom the first decretal paragraph and by substituting therefor a provision granting a separation to appellant on the ground of cruel and inhuman treatment, with the following memorandum: Appellant is a member of the Protestant faith and respondent is a member of the Roman Catholic faith. At appellant's insistence respondent agreed to marry appellant in appellant's church and to adhere to the tenets of said church. On January 22, 1947 the parties were married in appellant's church, a Protestant, interdenominational, self-governing church. At that time, appellant was about 41 years of age and respondent was either 36 or 40 years of age. No agreement was ever made that a marriage ceremony would subsequently be performed according to the rites of the Roman Catholic church. For some time after the marriage, respondent attended appellant's church but thereafter resumed attendance at a Roman Catholic church. A daughter was born on March 5, 1950. Respondent instructed the child in the Roman Catholic faith and attended a Roman Catholic church with the child. She refused to cease attending the Roman Catholic church with the child and refused to allow the child to be brought to the Sunday school of appellant's church. In February or March of 1954 respondent refused to have any further sexual intercourse with appellant until he consented to a marriage ceremony according to the rites of her church. He refused to consent. Respondent testified that appellant was a good father, a good provider and a very good husband except for the religious question; that, with the exception of the religious differences

between the parties, they could not ask for anything better in their relationship. She also testified that since March, 1954 she refused to have sexual intercourse with him and will refuse to have intercourse with him unless he meets her demand as to the marriage ceremony. There was no sexual intercourse between the parties from February or March of 1954 to October of 1954, when appellant left the marital abode and instituted this action. If we assume that both parties are sincere and honest believers in their respective faiths, they have the moral and legal right to worship as they please. With the exception of respondent's refusal to have intercourse, her conduct and the resulting disputes between the parties over the religious issue, which included attempts to convert him to her faith, do not constitute cruel and inhuman treatment within the meaning of section 1161 of the Civil Practice Act (*Booke* v. *Booke*, 1 A D 2d 782; *Reese* v. *Reese*, 194 App. Div. 907; cf. *Pearson* v. *Pearson*, 230 N. Y. 141). There is a finding by the trial court that "Neither shows any outward manifestations of any real or apparent injury to their mental and/or physical health nor is there sufficient evidence in the record from which any such inferences can be drawn". Undoubtedly, the finding of the trial court in such an action is entitled to great weight (*Tower* v. *Tower*, 134 App. Div. 670). But in the *Tower* case it was also said that (p. 671) : "There is no exact standard of what constitutes cruel and inhuman treatment. Conduct on the part of a husband which, under some circumstances, might be passed over without serious consideration, is, under other circumstances, cruel and inhuman; it depends upon the temperament, the breeding, the condition in life, and a great variety of special circumstances". The institution of marriage is a complex one. It has sociological, legal, economic, moral, psychological, physical and religious implications. While we may concern ourselves with only the legal ones, the courts and the statutes governing domestic relations have taken into consideration its other aspects, including the physical (*Mirizio* v. *Mirizio*, 242 N. Y. 74). This is indicated by the facts that (1) an annulment may be granted for physical incapacity for sexual relationship or a fraudulent refusal to consummate a marriage (Civ. Prac Act, §§ 1141, 1139), (2) adultery is the only ground for divorce (Civ. Prac. Act, § 1147), and (3) proof that a wife who has obtained a divorce or annulment is living with another man and holding herself out as his wife, although not married to such man, is a ground for vacating an award of alimony (Civ. Prac. Act, § 1172-c). Men do not marry merely for the privilege of supporting a wife. "The human race was created male and female with the manifest purpose of perpetuating the race. Marriage without sexual intercourse utterly defeats its purpose, as sexual intercourse except in the marital relation is contrary to the divine law, and criminal under our laws. All other duties which inhere in the marriage relation can be contracted for, and performed without violating any law, before marriage." (*Raymond* v. *Raymond*, 79 A. 430, 431 [N. J.]; *Rector* v. *Rector*, 78 N. J. Eq. 386; *Fleegle* v. *Fleegle*, 136 Md. 630.) The refusal of a husband or wife, without any legal excuse, to have ordinary marital relations with the other party to the marriage contract strikes at the basic obligations springing from the marriage relationship. If the marriage relationship, the foundation upon which must rest the perpetuation of the race, society and our civilization, is not maintained, the alternatives are no children, or adultery, licentiousness and illegitimate children, which alternatives the State abhors (*Mirizio* v. *Mirizio, supra*). A wife's refusal to have marital intercourse should have some just cause or excuse. If there is wrongful intent, such wrongful intent is the essence of the refusal (*Munger* v. *Munger*, 130 N. J. Eq. 279; *Mirizio* v. *Mirizio, supra*). While refusal to have sexual relations has, in some cases, been held not to be a ground

for a separation in this State, the refusals in those cases were brought about by other factors not present in this case. Here there was no mental aversion or psychological incapacity for intercourse based on a state of health or the lack of harmonious relations between the parties in many matters (see, e.g., 10 Corn. L. Q. 377–378). There was no necessity for appellant to appear "pale and wan" as a basis for a finding of mental cruelty nor was there a basis for a finding that he was so insensitive as not to suffer mental anguish at the defection in his wife and the scorn of his only child who, as a result of her training was already openly prejudiced against her father's religious faith and who, according to his testimony, had publicly expressed her criticism thereof. There was no basis for a finding that he was so insensitive that the alternative with which he was presented by his wife did not affect his mental and physical health. Respondent's refusal to have marital intercourse was a breach of her legal marital obligations and was without legal justification (*Mirizio* v. *Mirizio*, 242 N. Y. 74, *supra*). In my opinion, her prolonged, willful, legally unjustified and definite refusal to have intercourse with appellant unless he complied with her demand, affected him so seriously as to impair his mental health and constituted cruel and inhuman treatment within the meaning of the statute (see, e.g., *Pearson* v. *Pearson*, 230 N. Y. 141, *supra*; *Stone* v. *Stone*, 277 App. Div. 786, affd. 301 N. Y. 766; *Jacobsen* v. *Jacobsen*, 205 Misc. 584, set aside on other grounds 205 Misc. 798; cf. *Lowenfish* v. *Lowenfish*, 100 N. Y. S. 2d 610, affd. 278 App. Div. 716).