Anna S. Campbell, Appellant, *v.* Edward B. Campbell, Respondent.

Third Department, December 30, 1952.

*Harry S. Travis* for appellant.

*James B. Gitlitz* for respondent.

HEFFERNAN, J. This is an action for separation by a wife against her husband in which the husband has interposed a counterclaim asking for like relief on his part. There is no serious dispute of fact in the case.

These parties were married on January 28, 1948, and had known each other for a period of forty years prior thereto. Both had been previously married, both had grown children by their former marriages, and both of the former spouses were dead.

At the time of the trial on April 28, 1952, the appellant was seventy-one years of age and respondent was sixty-seven. At the time of the marriage respondent's daughter, her husband and child resided with him. The husband and wife continued

to live together in respondent's home until November 25, 1949. At that time appellant informed respondent that she desired to spend Thanksgiving Day with a married daughter to which respondent made no objection. Appellant did not return to respondent's home but consulted counsel and on December 28, 1949, she instituted an action against respondent in the Supreme Court for separation on the ground that respondent's daughter, who was living with them, "with the consent and permission and at the insistence of the defendant, managed and controlled the household and interfered with plaintiff's management and control of her home". Respondent filed an answer in the action denying the material allegations of the complaint but interposed no counterclaim. This action was discontinued on March 17, 1950, by written stipulation signed by both parties and their attorneys. Apparently the discontinuance was due to the fact that appellant realized that the action was instituted by attorneys who were inexperienced in a cause of that nature and that fact prompted her to consent to the discontinuance of the suit.

Shortly after the discontinuance of the action appellant went to the home of respondent and sought to return but was dissuaded by respondent who testified on the trial that he "talked her out of it". Respondent also frankly conceded that from November, 1949, when appellant left his home he had made up his mind never to live with her again and that no effort on her part could possibly result in a reconciliation.

On March 24, 1950, appellant sent respondent a letter offering to return and resume marital relations. This communication was ignored by respondent. Within a week following appellant's letter she appeared at respondent's home with some of her belongings and stated in substance that she had consulted an attorney and that she had come to stay. Respondent was not at home when appellant arrived. Later in the day upon his return he refused to take appellant back and asked her to leave the premises which she declined to do. Against respondent's wishes she remained in the home for approximately five or six weeks. During that period respondent refused to permit her to occupy his bedroom and directed her to remain in a guest room.

It is conceded that from the time appellant returned to respondent's home she was not permitted to participate in any of the family affairs or in the management of the household.

On May 14, 1950, which was Mother's Day, appellant left respondent's home to spend that day with her daughter and grandchildren. During her absence respondent's daughter at

his request packed appellant's personal belongings in cartons and placed the same in a shed in the rear of the house. When appellant returned in the evening she found the doors of the house were locked and respondent told her in the presence of her grandson that she could not enter. A few days later respondent caused appellant's personal belongings to be sent to her at the home of her grandson where she was then residing. It is also conceded that on April 7, 1950, following his wife's return the husband instructed his attorneys to notify her that she had no right to remain in the home. The present action is based on the fact that appellant was forcibly ejected from the family home without just cause or provocation. In his answer respondent denied the material allegations of the complaint and interposed a counterclaim asking for a separation on the grounds of abandonment and the institution of the former suit which had been discontinued.

The learned Referee has found that after the discontinuance of the prior action appellant's offer to resume marital relations was not made in good faith and that respondent's refusal to resume such relationship did not constitute cruel and inhuman treatment or an abandonment of appellant. He, therefore, held that appellant had not established a cause of. action and also held that she had abandoned respondent and that he was entitled to a judgment of separation.

We are not in accord with these findings of the learned Official Referee. It seems to us that when the first separation action was discontinued on the consent of all parties, it was implicit therein that there was to be a resumption of marital relations. We are also convinced that the evidence shows that appellant was in good faith in offering to return and the respondent unjustly and unlawfully refused to permit her to do so. The evidence seems clear and convincing that respondent did not display good faith regarding his marriage vows in his conduct towards appellant following the termination of the first separation action. We also think that appellant should not be penalized for errors of inexperienced counsel in the institution of the original action. Then too, in this case there was no belated effort on the part of the wife to effect a reconciliation with her husband immediately after the discontinuance of the first action. On the contrary, she acted promptly. The mere fact that this wife left her husband and sued him for a separation in an action which was discontinued on the merits does not show abandonment on her part as a matter of law (*Mirizio* v. *Mirizio*, 248 N. Y. 175). In that case it appeared that plaintiff and defendant

were married in a civil ceremony with the understanding that a religious ceremony was to follow but the husband refused to carry out the agreement and the wife refused to live or cohabit with him until he did so. The wife sued for separation alleging nonsupport. The complaint was dismissed by the Special Term and this judgment was thereafter affirmed (212 App. Div. 524) and later by the Court of Appeals (242 N. Y. 74). On the second appeal it appeared that on the day following the decision by the Court of Appeals, plaintiff wrote a letter to defendant offering to live with him as his wife but defendant answered refusing to do so. Then followed a second cause of action decided by the Court of Appeals (248 N. Y. 175) to which decision we have referred.

In her complaint in the second action the wife stated that she had been advised by her attorney that she might refuse to live with her husband until the religious ceremony had been had and that acting on his advice she insisted upon such a ceremony. She then alleged that upon learning of the decision of the Court of Appeals she felt it was her duty to comply with that adjudication. At the Special Term she secured a judgment in her favor, the court holding that there had been no permanent abandonment but instead a temporary one pending the determination of her legal rights and that she did not forfeit her right to separate maintenance and support. The Appellate Division (222 App. Div. 239) reversed the judgment in the wife's favor and dismissed the complaint. Upon the second appeal to the Court of Appeals, that court said: " The question, therefore, is whether the refusal to cohabit with the defendant upon the grounds and in the conditions stated, is an abandonment so definitive as to be unaffected by repentance. The plaintiff acted on the advice of counsel and under a claim of legal right. She believed that she was not recreant to her duty as a wife when she declined to live with a husband who had shamelessly repudiated a promise to appease her conscience and his own by sanctifying the marriage with the blessing of the church. She had probable cause for that belief [and] * * * It turns out that she was in error. The moment she was so advised, she gave notice to the defendant that she would yield submission to the law. We are told that her error has barred his door to her forever." (248 N. Y. 175, 179.)

In answer to this question, the court said (pp. 179–180) : " Not every separation is an abandonment beyond annulment or recall. One must look to all the circumstances. Of these, time will commonly be the weightiest, yet not always so decisive that it

cannot be neutralized by others.   *   *   *   ' What is reasonable will depend on the circumstances of the case and the conduct of the parties ' (*Bohmert* v. *Bohmert* [241 N. Y. 446], *supra*, at p. 453).   Lawless repudiation of duty, an attitude and spirit of mere rebellion or defiance, maintained without repentance after cooling time has passed, may exact a finding of abandonment though the interval is short.   Mistake and provocation and hardship and reservations will permit another finding though the interval is long.   There are duties too for the deserted spouse as well as the deserter.   One who is chargeable with fault contributing to the breach, palliating and explaining it though not excusing it altogether, may not stand back indifferent, refusing the concessions to be expected of gentleness and honor   *   *   *. Separation to be abandonment must be obstinate and hardened (cf. 1 Bishop, New Comm. on Mar., Div. Sep. § 1665).''

The court also went on to say (pp. 180–181) : '' We are to measure the plaintiff's conduct by these and cognate tests of right dealing and humanity.   She was the victim of mistake. She acted, as we have seen, in accordance with the advice of counsel and with probable cause.   She was the victim, besides, of provocation and oppression.   The defendant had treated her with indifference to her feelings and in wanton disregard of his solemn word of honor.   His refusal to fulfill the promise that would have made her his at once, gives color to the belief that he was scheming to be rid of her (cf. *Thorpe* v. *Thorpe*, 9 R. I. 57).   He could not have acted differently if he had been seeking from the beginning to provoke her to a course of conduct that would have freed him from the course of duty as her husband. *   *   *   Plainly however, she was not wrong in such a sense or in such a degree as to betoken defiance of duty, a ' rebellious and unrepentant ' spirit,   *   *   *   a will to live apart whether the law approved or frowned.   She invoked the law to aid her. The moment it condemned her, she bowed to its command.   We think a term of separation may not be said to constitute as a matter of law a definitive abandonment when it is bounded by a law suit, maintained upon reasonable grounds and with sincerity of conviction for the very purpose of determining whether the separation shall continue.   No doubt the interval has been a long one, nearly five and a half years, between marriage and submission.   At first the husband was the plaintiff in an unfounded action for annulment.   The wife postponed, it seems, her suit for separation until his had been dismissed.   But if the time has been long, the defendant could have made it short. There has never been a day in all these years when he might

not have had the plaintiff as his own if he had done what a man of honor and a gentleman should have been prompt and glad to do. One is not aggrieved by a separation thus fostered and prolonged.''

Respondent seeks to sustain this judgment upon the authority of *Solomon* v. *Solomon* (290 N. Y. 337). We think the facts in this case clearly distinguish it from the *Solomon* case. In that case it appeared that plaintiff and defendant were married on May 27, 1929, and thereafter lived together and cohabited as husband and wife until May, 1934. On February 11, 1938, nearly four years after the separation the wife commenced an action against her husband for separation and support on the ground of cruel and inhuman treatment and for failure to support. The trial court found that '' there was no cruel and inhuman treatment, no conduct which made it unsafe or improper for the plaintiff to cohabit with the defendant and no failure of the defendant to provide for the plaintiff '' and dismissed the complaint and granted a judgment of separation to the defendant on the ground of abandonment. Upon appeal the Appellate Division (256 App. Div. 959), modified the judgment by dismissing the counterclaim and otherwise in all respects affirmed. This determination was unanimously affirmed by the Court of Appeals (282 N. Y. 565). The decision of the Court of Appeals was announced on December 28, 1939. On March 1, 1940, plaintiff commenced another action for separation on the ground that defendant had refused to live with her, establish a home for her, or otherwise maintain and support her according to his ability. At the close of the trial the complaint was dismissed on the merits. Upon appeal to the Appellate Division (263 App. Div. 678), the determination of the trial court was reversed and a judgment was directed in favor of the plaintiff, and from that judgment defendant appealed to the Court of Appeals. That court by a vote of four to three held that '' It was conclusively and finally adjudicated in the former action that the charges made by the plaintiff against the defendant were untrue '' (290 N. Y. 340) and consequently sustained the right of the husband to reject a reconciliation.

In the case before us the facts are entirely different for the reason that there was no conclusive and final adjudication in the first separation action brought by appellant that the charges were untrue but on the contrary the case was withdrawn by stipulation of the parties. We think, therefore, that the *Solomon* case is not controlling.

The judgment appealed from should be reversed on the law and facts and judgment should be granted in favor of the appellant for a separation from respondent, with costs in this court and in the court below. Certain findings of fact should be reversed, certain conclusions of law should be annulled, and new findings of fact and conclusions of law made.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Judgment appealed from reversed, on the law and facts, and judgment granted in favor of the appellant for a separation from respondent, with costs in this court and in the court below. Certain findings of fact are reversed, certain conclusions of law are annulled, and new findings of fact and conclusions are made. Settle order on notice.